**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ANTHONY E. RAMOS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case Number:  1:06CV01941(RMU) |
| | ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, defendants United States Department of

Justice, Executive Office for Immigration Review ("EOIR"), and the Board of Immigration

Appeals ("BIA" or the "Board"),[1] through undersigned counsel, hereby move that the Court

enter summary judgment in favor of defendants.  As set forth in the accompanying memorandum

of law, the Board did not abuse its discretion when reaching the decision challenged in plaintiff's

petition for review, and its order must therefore be affirmed.

---

[1] Although the captions on plaintiff's recent pleadings appear to list United States
Citizenship and Immigration Service ("USCIS") as a Defendant, USCIS is not a party to this
action.  The petition for review that initiated this action names only the three defendants listed
above, and those are the only three defendants on this Court's docket sheet.  USCIS is a
Department of Homeland Security agency, and is not a part of the Board of Immigration Appeals
or the Department of Justice.

A statement of material facts not in dispute and a proposed order are filed herewith.

Dated: May 10, 2007                    Respectfully submitted,


_____/s/ by RMM_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/ by RMM_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/ Robin M. Meriweather_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198
Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
ANTHONY E. RAMOS                      )
                                      )
                Plaintiff,            )
                                      )
        v.                            )    Case Number:  1:06CV01941(RMU)
                                      )
UNITED STATES DEPARTMENT OF JUSTICE,  )
et al.,                               )
                                      )
                Defendants.           )
                                      )
                                      )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A MANDATORY INJUNCTION AND PLAINTIFF'S FIRST SUPPLEMENT TO THE MANDATORY INJUNCTION MOTION AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION AND SUMMARY

Defendants United States Department of Justice, Executive Office for Immigration Review ("EOIR"), and the Board of Immigration Appeals ("BIA" or the "Board"),[2] through undersigned counsel, hereby oppose plaintiff's Motion for a Mandatory Injunction and the "First Supplement to Motion for Mandatory Injunction and For Judicial Notice" (collectively "Mandatory Injunction Motions").  Plaintiff appeals a Board order denying his motion to reopen the disciplinary proceedings in which the Board expelled him from practice before the Board, immigration courts, and the Department of Homeland Security ("DHS").  In the underlying

---

[2] Although the captions on plaintiff's motions appear to list United States Citizenship and Immigration Service ("USCIS") as a Defendant, USCIS is not a party to this action.  The petition for review that initiated this action names only the three defendants listed above, and those are the only three defendants on this Court's docket sheet.  USCIS is a Department of Homeland Security agency, and is not a part of the Board of Immigration Appeals or the Department of Justice.

disciplinary proceedings, the Board determined that reciprocal disciplinary action was necessary because the Florida bar had disbarred Mr. Ramos due to numerous instances of misconduct, including lying to a tribunal, misappropriations of client funds, forgery of clients' signatures on settlement drafts, misrepresentation to successor counsel, collection of excessive fees, and representing a client without authority, and had determined that Mr. Ramos could not seek reinstatement to that bar for twenty years.  *See In re Ramos*, 23 I.&N. Dec. 843, 844 (BIA 2005) (Exh. 1, App. 0042).[3]  Plaintiff now seeks an injunction requiring defendants to remove internet postings that publicize the results of the Board's disciplinary proceedings.  Although the Mandatory Injunction Motions do not provide a link to the relevant webpages, plaintiff appears to complain of two internet postings: the inclusion of plaintiff's name on a list of attorneys that have been disciplined (which includes links to the underlying Board disciplinary orders) and an EOIR press release reporting that plaintiff and other attorneys had been disciplined.  *See* Exh. 2. Notwithstanding plaintiff's contrary allegations, the sanctions reported on those internet postings have not expired.

    While plaintiff's motions demonstrate that Mr. Ramos might find defendants' publication of the disciplinary sanctions embarrassing, they fall far short of establishing that a mandatory injunction is warranted.  Given the stage of the proceedings, plaintiff's motions should be analyzed under the framework governing preliminary injunction motions.  Thus they must be denied unless plaintiff establishes that: (1) he is likely to succeed on the merits; (2) he will suffer

---

[3] The portions of the administrative record relevant to defendants' summary judgment motion and plaintiff's mandatory injunction motion are included in an appendix attached as Exhibit 1 to this memorandum of law.  Defendants will submit a comprehensive administrative record to the Court as soon as the relevant materials have been gathered and assembled.

irreparable injury absent an injunction; (3) granting the injunction would not harm third parties; and (4) granting the injunction would serve the public interest.

All four factors of the preliminary injunction analysis counsel against granting plaintiff's motion.  Courts subject the Board's denial of motions to reopen to minimal scrutiny, asking whether the Board's decision was irrational, contrary to established policies, or based on impermissible factors such as racial discrimination.  Here, the Board issued a well-reasoned decision explaining why plaintiff failed to show that reopening was warranted.  Accordingly, plaintiff cannot succeed on the merits of his appeal.  Second, plaintiff's conclusory allegations that the postings harm his reputation do not prove that he will suffer irreparable harm, particularly given plaintiff's consent to the Board's publication of its final decision.  Finally, even if plaintiff had shown irreparable harm, that harm would be outweighed by the negative effects an injunction would have upon third parties and the public interest.  Defendants publicize the results of the disciplinary proceedings to further the public interest in disclosure of that information, and to protect individuals from being represented by attorneys who have engaged in unethical or unprofessional conduct.  The injunction plaintiff seeks would make it difficult for parties to immigration proceedings and the broader public to learn that plaintiff has been expelled from practice before the Board, immigration courts, and DHS.

To the extent plaintiff seeks entry of a permanent injunction, the motion must be denied for the same reasons.  To obtain permanent injunctive relief, plaintiff must first obtain a favorable ruling on the merits.  He has not yet briefed the merits to this Court, and even if he had, he would be unable to present a persuasive case for reversing the Board's order.  The Board has considerable discretion to deny a motion to reopen, and its denial of plaintiff's motion was

not an abuse of that discretion. The Board properly determined that plaintiff failed to identify

any new material facts that would warrant reevaluation of the Board's imposition of reciprocal

discipline. For all those reasons, the Court should deny the Mandatory Injunction Motions and

enter summary judgment in favor of defendants.

## **BACKGROUND**

### A.    **Regulatory Background**

#### 1.    **Reopening or Reconsideration of Board Decisions**

A party that opposes a final Board decision may file a motion for reconsideration or a

motion to reopen the proceedings. *See* 8 C.F.R § 1003.2(a). A motion to reconsider must "state

the reasons for the motion by specifying the errors of fact or law in the prior Board decision and

shall be supported by pertinent authority." *Id.* § 1003.2(b)(1). In contrast, a motion to reopen

"shall state the new facts that will be proven at a hearing to be held if the motion is granted and

shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(i). A

motion to reopen proceedings "shall not be granted unless it appears to the Board that the

evidence sought to be offered is material and was not available and could not have been

discovered or presented at the former hearing." *Id.*

The Board's grant or denial of a motion to reopen or a motion to reconsider is a

discretionary decision. *See id.* § 1003.2(a). The Board may deny a motion to reopen "even if the

moving party has made out a *prima facie* case for relief." *Id.* The Board must resolve motions

to reconsider or motions to reopen "by written order." *Id.* § 1003.2(i).

### 2.     Professional Conduct and Practitioner Discipline Regulations

Federal regulations authorize EOIR and DHS to initiate disciplinary proceedings and request that disciplinary sanctions be imposed against any attorney eligible to practice before the Board, immigration courts, or DHS.  Specifically:

> [a]n adjudicating official or the Board of Immigration Appeals (the Board) may impose disciplinary sanctions against any practitioner if it finds it to be in the public interest to do so.  It will be in the public interest to impose disciplinary sanctions against a practitioner who is authorized to practice before the Service[4] when such person has engaged in criminal, unethical, or unprofessional conduct, or in frivolous behavior, as set forth in § 3.102 of this chapter.

8 C.F.R. § 292.3(a)(1); *id.* § 1292.3(a)(1) (same).  A nearly identical regulatory provision authorizes the imposition of disciplinary sanctions against any practitioner authorized to practice before the Board or in immigration courts.  *See id.* § 1003.101(a).  The sanctions the Board may impose include expulsion, suspension, and public or private censure.  *See id.* §§ 292.3(a)(1), 1003.101(a)(1), 1292.3(a)(1).

A "practitioner" potentially subject to those sanctions is "any attorney as defined in 8 C.F.R. § 1.1(f) or § 1001.(f) who does not represent the federal government, or "any representative" as defined in 8 C.F.R. § 1.1(j) or § 1003.101(j).  *Id.* §§ 292.3(a)(2), 1292.3(a)(2), 1003.101(b).  Sections 1.1(f) and 1001.1(f), in turn, define an "attorney" as "any person who is a member in good standing of the bar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, and is not under any order of any court suspending,

---

[4] The "Service" references "the Immigration and Naturalization Service as it existed prior to March 1, 2003." 8 C.F.R. § 1.1(c).  References to "the Service" after March 1, 2003 generally "mean the Bureau of Citizenship and Immigration Services, the Bureau of Customs and Border Protection, and the Bureau of Immigration and Customs Enforcement."  *Id.*  Those three agencies are now part of the Department of Homeland Security.

-5-

enjoining, restraining, disbarring, or otherwise restricting him in the practice of law." *Id.* §§ 1.1(f), 1001.1(f). Sections 1.1(j) and 1001.1(j) define a "representative" as "a person who is entitled to represent others as provided in [8 C.F.R. § 292.1]." *Id.* §§ 1.1(j), 1001.1(j). Section 292.1 includes attorneys and law students and, if certain conditions are met, "any reputable individual of good moral character." 8 C.F.R. §§ 292.1(a), 1292.1(a). A narrower class of practitioners may represent individuals in application and petition proceedings. *See id.* § 103.2(a)(3).

The regulations expressly direct the Office of the General Counsel of DHS to seek immediate suspension of any practitioner who has been disbarred or suspended by another state or federal court. Specifically:

> The Office of the General Counsel of the Service shall petition the Board to suspend immediately from practice before the Service any practitioner. . . who has been disbarred or suspended on an interim or final basis by, or has resigned with an admission of misconduct from, the highest court of any state, possession, territory, commonwealth, or the District of Columbia, or any Federal court.

*Id.* §§ 292.3(c)(1), 1292.3(c)(1). Once USCIS files that petition for immediate suspension, it "shall be forwarded to the Office of the General Counsel of EOIR," and EOIR may submit a written request that any order suspending the practitioner from practice before DHS also apply to the practitioner's ability to practice before the Board or the immigration courts. *Id.* USCIS must "promptly" initiate "summary disciplinary proceedings" against an individual who has been disbarred or suspended from a state or federal court bar, or convicted of certain crimes. *Id.* §§ 292.3(c)(3), 1292.3(c)(3).

In summary disciplinary proceedings commenced because of a final order of disbarment or suspension, a certified copy of the disbarment or suspension order establishes a "rebuttable

presumption of the professional misconduct." *Id.* §§ 292.3(c)(3)(ii), 1292.3(c)(3)(ii).  Reciprocal disciplinary sanctions will be issued unless the attorney rebuts the presumption.  *See id.*  To rebut the presumption, the attorney must demonstrate by "clear, unequivocal, and convincing evidence" that

> (A) the underlying disciplinary proceeding was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (B) There was such an infirmity of proof establishing the practitioner's professional misconduct as to give rise to the clear conviction that the adjudicating official could not, consistent with his or her duty, accept as final the conclusion on that subject; or (C) The     imposition of discipline by the adjudicating official would result in grave injustice.

*Id.* §§ 292.3(c)(3)(ii), 1292.3(c)(3)(ii).

The regulations also establish procedural rules governing disciplinary proceedings.  The Office of the General Counsel of DHS initiates the formal proceedings by issuing a Notice of Intent to Discipline to the practitioner that has been charged with professional misconduct.  *See id.* §§ 292.3(e)(1), 1292.3(e)(1).  The practitioner then files an answer, *see id.* §§ 292.3(e)(3), 1292.3(e)(3), and the Board appoints an Immigration Judge to serve as an "adjudicating official." *Id.* § 1003.106(a).  The Immigration Judge reviews the record, and renders a decision.  *See id.* § 1003.106(b).  Either party may appeal that decision to the Board.  *See id.* § 1003.106(c).

The regulations and the BIA practice manual expressly contemplate the publication of the Board's disciplinary rulings.  "If disciplinary sanctions are imposed against a practitioner (other than a private censure), the Board may require that notice of such sanctions be posted at the Board, the Immigration Courts, or the Service for the period of time during which the sanctions are in effect, or for any other period of time as determined by the Board." *Id.*  The Office of the General Counsel for DHS and EOIR also must report final disciplinary decisions to disciplinary

and regulatory authorities in other jurisdictions where the disciplined practitioner is authorized to practice. *Id.* §§ 1003.106(d), 292.3(g), 1292.3(g). The BIA Practice Manual provides that a list of practitioners who have been expelled or suspended from immigration practice will be posted on the EOIR website, at the Board, and in the immigration courts. *See* BIA Practice Manual § 11.8 (Exh. 3) (http://www.usdoj.gov/eoir/vll/qapracmanual/pracmanual/chap11.pdf).

The regulations do not provide for the automatic expiration of disciplinary sanctions after a fixed period of time. Instead, a practitioner who has been expelled but wishes to return to practice before the Board, immigration courts, or DHS must file a petition for reinstatement at least one year after the expulsion. *See* 8 C.F.R § 1003.107(b). In that petition, the practitioner must demonstrate "by clear, unequivocal, and convincing evidence that he or she possesses the moral and professional qualifications required to appear before the Board and the Immigration Courts or Service." *Id.* § 1003.107(b)(1). Accordingly, a practitioner whose expulsion resulted from reciprocal discipline would have to demonstrate that (s)he was in good standing and eligible to practice in other jurisdictions. *See id.* § 1.1(f) (defining qualifications necessary to be an "attorney" eligible to practice before the Board, immigration courts, or DHS).

### B.    The Disciplinary Proceedings Against Plaintiff Anthony E. Ramos

DHS initiated the disciplinary proceedings against plaintiff by issuing a Notice of Intent to Discipline on October 21, 2004. *See In re Ramos*, 23 I & N Dec. at 844 (Exh. 1, App. 0042). The Notice of Intent to Discipline alleged that plaintiff had been disbarred in the State of Florida, and that reciprocal discipline was warranted under 8 C.F.R. §§ 292.3(c)(1) and 1292.3(c)(1). *See In re Ramos*, 23 I&N Dec. at 844 (Exh. 1, App. 0042). In addition, DHS filed a petition for immediate suspension from practice before DHS. *See id.* On November 4, 2004, the EOIR

Office of General Counsel requested that plaintiff also be suspended from practice before the Board and immigration courts. *See id.* at 844-45 (Exh. 1, App. 0042-0043). The Board granted the petition for immediate suspension on December 6, 2004. *See* Exh. 1, App. 0050 (Dec. 6, 2004 Board Order).

The Board then forwarded the record to an immigration judge, who served as the "adjudicating official" in this case. *See In re Ramos*, 23 I & N Dec. at 845 (Exh. 1, App. 0043); *see also* 8 C.F.R. §§ 292.3(f), 1292.3(f). The immigration judge determined that plaintiff should be expelled from practice before the Board, immigration courts, and DHS, and issued an expulsion order March 21, 2005. *See* Exh. 1, App. 0047-0048 (hereafter "Mar. 2005 Order"). In the proceedings before the immigration judge, plaintiff did not contest that he had been disbarred. *See* Mar. 2005 Order at 2 (Exh. 1, App. 0048). Instead, he focused exclusively on the Board's jurisdiction to sanction him, arguing that he was not a member of an immigration bar. *See id.* The Board already had rejected plaintiff's jurisdictional arguments when granting the petition for immediate suspension. *See* Dec. 6, 2004 Order at 1-2 (Exh. 1, App. 0049-0050). Accordingly, the immigration judge concluded that no hearing was necessary, and that expulsion was the proper remedy. *See* March 2005 Order at 2 (Exh. 1, App. 0050).

Plaintiff appealed the immigration judge's ruling to the Board. The Board affirmed the immigration judge's expulsion of plaintiff from practice in a decision issued July 25, 2005 and amended (to make editorial changes) November 15, 2005. *See* 23 I&N Dec. at 844 (Exh. 1, App. 0042). The Board concluded that "clear, unequivocal, and convincing evidence establishes that it is in the public interest to discipline the respondent, based on the final order of disbarment issued by the Supreme Court of Florida on December 18, 1997." *Id.* at 848 (Exh. 1, App. 0046).

Thereafter, USCIS requested that the Board publish its decision. *See* Exh. 1, App. 0039.

Plaintiff was aware of that request, and sent the Board a letter stating that he had "no objection to

the publication of this case of first impression." Exh. 1, App. 0036.

Four months after plaintiff consented to the publication of the final disciplinary order, he

filed a motion for reconsideration, which the Board denied. *See* Exh. 1, App. 0033-0034.

Plaintiff subsequently filed a "motion to vacate" and "motion for evidentiary hearing," which

DHS opposed. *See* Exh. 1, App. 0003-0032. The Board construed plaintiff's submissions as a

motion to reopen, and denied the motion in an order issued June 7, 2006. *See* Exh. 1, App. 0001-

0002 ("Reopening Order"). The Board concluded that plaintiff's motion repeated arguments that

the Board had already rejected, and failed to submit "newly discovered evidence" that would

warrant reopening the Board's prior decisions. Reopening Order at 2 (Exh. 1, App. 0002).

Plaintiff filed a petition for review in the United States Court of Appeals for the D.C.

Circuit, challenging the Board's June 7, 2006 Reopening Order. The appellate court determined

that it lacked jurisdiction over plaintiff's claims, and therefore transferred the case to this Court.

*See* Dkt. Entries 1-3.

## <u>ARGUMENT</u>

## I.    PLAINTIFF HAS NOT SHOWN THAT HE IS ENTITLED TO A PRELIMINARY INJUNCTION.

Given that plaintiff seeks injunctive relief in advance of a ruling on a dispositive motion

or any other merits ruling, the preliminary injunction standard should govern his Mandatory

Injunction Motions. A preliminary injunction is an "extraordinary and drastic remedy."

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The moving party must show:

> (1) a substantial likelihood of success on the merits; (2) that it would suffer
> irreparable injury if the injunction were not granted; (3) that an injunction would
> not substantially injure other interested parties; and (4) that the public interest
> would be furthered by the injunction.

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also*

*Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc.*

*v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998); *Taylor v. Resolution Trust Corp.*, 56 F.3d

1497, 1505-06 (D.C. Cir. 1995); *NTEU v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991);

*Randolph-Sheppard Vendors v. Weinberger*, 795 F.2d 90, 110 (D.C. Cir. 1986).  Those four

factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs.,*

*Inc.*, 158 F.3d at 1318.  However, if the moving party fails to establish any likelihood of success

on the merits, the preliminary injunction motion must be denied. *See Katz v. Georgetown Univ.*,

246 F.3d 685, 688 (D.C. Cir. 2001) (finding preliminary injunction "never will be granted unless

a claimant can demonstrate a 'fair ground for litigation'"); *Experience Works, Inc. v. Chao*, 267

F. Supp. 2d 93, 96 (D.D.C. 2003).  A party's failure to establish irreparable harm can be equally

fatal.  *See CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Farris v. Rice*, 453 F.

Supp. 2d 76, 78 (D.D.C. 2006).

       The movant bears the burden of persuasion, and may obtain a preliminary injunction only

upon a "clear showing" that it is entitled to that extraordinary remedy.  *Chaplaincy of Full*

*Gospel Churches*, 454 F.3d at 297.  That burden is even heavier where, as here, the preliminary

injunction motion seeks mandatory relief instead of the preservation of the status quo.  *Mylan*

*Pharmaceuticals, Inc. v. Shalala*, 81 F.Supp. 2d 30, 36 (D.D.C. 2000).  Such motions are

disfavored, and "the movant must show *clearly* that she is entitled to relief or that extreme or

very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (emphasis added).

### A.    Plaintiff Is Unlikely To Succeed on the Merits.

A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining a preliminary injunction. *See Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz*, 246 F.3d at 688; *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)).  Neither of plaintiff's memoranda of law provides a viable theory on which plaintiff could prevail on the merits of his petition for review of the Board's denial of his motion to vacate its prior orders or to conduct an evidentiary hearing.  Indeed, the memoranda focus almost exclusively on the internet posting of the results of the the Board disciplinary proceedings, an issue that was not even raised in the motions that the Board denied.  Thus the Court could deny plaintiff's motion for failure to establish a "likelihood of success," and need not reach the remaining elements of the preliminary injunction analysis. *See Katz*, 246 F.3d at 688.

### 1.    The Board's Order Must Be Upheld Unless Plaintiff Demonstrates That It Was An Abuse of Discretion.

To the extent the arguments in plaintiff's motion challenge the underlying Board order that plaintiff asked the Board to reopen, or other prior Board orders, they are outside the scope of this appeal.  Plaintiff's petition for review identified only the June 7, 2006 Board order as the

subject of his appeal. *See* Dkt. Entries 1-3 at 5. Plaintiff's description of the "issue presented for review" to the D.C. Circuit also focused solely on the June 7, 2006 order, and defined the issue presented as "whether the entry of the order of June 7, 2006 was arbitrary [and] capricious, where the tribunal again refused to hold an evidentiary issue, in violation of regulations requiring a hearing; and whether such refusal was in violation of respondent's due process rights." *Id.* at 31. Accordingly, the relevant question for purposes of this motion is whether plaintiff has a likelihood of succeeding on the merits of his challenge to the Board's determination that his reopening motion should be denied. *See Jean v. Gonzales*, 435 F.3d 475, 482 (4th Cir. 2006) (finding court's review "limited to the motion to reconsider" because plaintiff did not petition for review of underlying Board order); *Asemota v. Gonzales*, 420 F.3d 32, 33 (1st Cir. 2005) (concluding "the only issue before us is the denial of the motion to reconsider" because court would have lacked jurisdiction over untimely challenge to prior Board order).

Courts apply a highly deferential standard of review to challenges to Board orders denying or granting a petition to reopen or reconsider a prior Board order. The denial or grant of the petition may be disturbed only if it was an "abuse of discretion." *Immigration and Naturalization Serv. v. Abudu*, 485 U.S. 94, 105 (1988); *see also, e.g.*, *Jian Wen Wang v. Bureau of Citizenship and Immigration Ser.*, 437 F.3d 276, 277 (2d Cir. 2006); *Guevara v. Gonzales*, 450 F.3d 173, 175 (5th Cir. 2006); *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006); *Membreno v. Gonzales*, 425 F.3d 1227, 1229 (9th Cir. 2005). That standard of review is consistent with this Circuit's recognition that "[t]here is a presumption in favor of the validity of administrative action." *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 216 (D.D.C. 1996). Under that deferential standard, the Board's decision must be upheld unless it "was made

-13-

without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Sako*, 434 F.3d at 863; *see also Asemota,* 420 F.3d at 34 (identifying same standard); *Jean v. Gonzales*, 435 F.3d 475, 483 (4th Cir. 2006) (same); *see generally Motor Vehicle Mfrs. Ass'n of the United Sates, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (defining similar standard of review under Administrative Procedures Act); *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003) (same).

### 2.    The Board's Denial of Plaintiff's Petition to Reopen Was Reasonable and Consistent With Board Rules.

#### a.    The Board Thoroughly Explained Its Reasoning.

The Board construed plaintiff's "Motion to Vacate Disciplinary Orders" and "request for Evidentiary Hearing on Motion to Vacate Disciplinary Orders" as a motion to reopen the Board's July 25, 2005 final order ("July 2005 Disciplinary Order"). In the July 2005 Disciplinary Order, the Board affirmed an immigration judge's determination that plaintiff should be expelled from practicing before the immigration courts, the Board, and the Department of Homeland Security. *See In re Ramos*, 23 I.&N. Dec. 843, 844 (BIA 2005) (Exh. 1, App. 0042). The Board concluded that clear, unequivocal, and convincing evidence established that it was in the public interest to discipline Mr. Ramos, and that expulsion was the proper sanction. *See id.* at 848 (Exh. 1, App. 0046).

The Board denied plaintiff's motion to reopen because it found that the motion lacked merit. Plaintiff's motion accused the EOIR and DHS prosecutors of misrepresentation and making false statements concerning plaintiff's practice before the Board, immigration courts, or DHS, including the remarkable allegation that a prosecutor counterfeited the documents

-14-

submitted as evidence that Ramos had been identified as applicants' attorney or representative in DHS proceedings. *See* Exh.1, App. 0016-0021. The Board noted that plaintiff's allegations of false statements and fraud by the prosecutors were arguments that the Board had reviewed and rejected twice before — when issuing its July 2005 Disciplinary Order and when denying plaintiff's petition for reconsideration. *See* Reopening Order at 1 (Exh. 1, App. 0001); *see also id.* at 2 (Exh. 1, App. 0002) (noting that plaintiff's motion "contains unsupported allegations that have previously been rejected by the Board"). The Board also reaffirmed its prior holding that no hearing was necessary before the immigration judge. The Board reasoned that there were "no issues of material fact that would necessitate a hearing in this case," given that 8 C.F.R § 1292.3(c)(3) creates a rebuttable presumption that disciplinary sanctions should follow any final order of disbarment. *See* Reopening Order at 1-2 (Exh. 1, App. 0001-0002).

The Board further held that "[t]he supposed 'newly discovered evidence'" that plaintiff referenced in his motion did not warrant reopening the case. *Id.* at 2 (Exh. 1, App. 0002). Although that evidence included a letter from EOIR bar counsel indicating that plaintiff had not appeared as "attorney of record in *any cases before EOIR*," Mr. Ramos had practiced before DHS, by submitting "Notice of Entry of Appearance As An Attorney or Representative" forms to DHS on behalf of parties appearing before DHS. *Id.* at 2 (Exh. 1, App. 0002) (emphasis added). Accordingly, that evidence did not contradict the Board's prior holding that plaintiff was a "practitioner" subject to the professional conduct rules governing practice before the Board, immigration courts, or DHS. *See* July 2005 Disciplinary Order, 23 I&N Dec. at 847 (Exh. 1, App. 0045); 8 C.F.R. §§ 292.3, 1292.3.

   **b.** **The Board's Analysis Was Reasonable And Consistent With Applicable Law.**

The Board's decision to construe plaintiff's motion as a petition to reopen Board proceedings was a reasonable interpretation of applicable law. Although plaintiff captioned his pleading as a "motion to vacate disciplinary orders," the relevant regulations identify only two forms of motions that may be filed to request that the Board reevaluate a prior Board order — a motion for reconsideration and a motion to reopen the proceedings. *See* 8 C.F.R § 1003.2(a). A motion to reconsider must "state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." *Id.* § 1003.2(b)(1). The purpose of reconsideration motions "is not to raise new facts, but to demonstrate that the Board erred as a matter of law or fact." *Ven v. Ashcroft*, 386 F.3d 357, 360 (1st Cir. 2004). In contrast, a motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material."

8 C.F.R. § 1003.2(c). Given that plaintiff's motion sought a hearing and purported to identify new facts, it was properly characterized as a motion to reopen. *See Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007) (noting BIA practice of construing reconsideration motions that include new evidence as motions to reopen); *Zhao v. United States Dep't of Justice*, 265 F.3d 83, 90 (2d Cir. 2001) (affirming BIA's re-classification of reconsideration motion as motion to reopen where movant included new evidence). Indeed, if the Board had construed plaintiff's motion as a motion for reconsideration, the regulations prohibiting successive motions for reconsideration would have required that the motion be denied. *See* 8 C.F.R. § 1003.2(b)(2) ("A party may file only one motion to reconsider any given decision.").

-16-

The Board correctly determined that plaintiff's motion failed to establish that reopening was warranted. The Board has considerable discretion to deny a motion to reopen, and may deny the motion "even if the party moving has made out a *prima facie* case for relief." *Id.* § 1003.2(a). However the regulations do constrain the Board's ability to *grant* a motion, and provide that "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id.* § 1003.2(c)(1). As noted *supra*, the Court must affirm the Board's ruling on the motion to reopen unless it was irrational, contrary to established policies, or based on impermissible factors such as racial discrimination. *See, e.g.*, *Alizoti*, 477 F.3d at 453.

The Board's denial of plaintiff's motion easily survives review under that deferential standard. The Board provided a reasoned basis for its decision, and therefore cannot be said to have acted "irrationally." The Board's decision also complied with the regulatory requirement that motions to reopen be denied absent "new facts" that are "material." 8 C.F.R. § 1003.2. The Board concluded that many of plaintiff's factual allegations were not 'new,' but instead had been presented to the Board (and rejected) on more than one occasion. *See* Reopening Order at 1 (Exh. 1, App. 0001).

To the extent plaintiff's motion referenced facts that arguably could be construed as new, those facts would not have caused the Board to rule differently in its prior order. For example, plaintiff contended that a January 2003 letter from EOIR — responding to an inquiry from the Florida Bar and stating that plaintiff had not practiced before EOIR — was a new fact supporting plaintiff's jurisdictional arguments. *See id.* at 2 (Exh. 1, App. 0002). However that letter made

-17-

no representations concerning plaintiff's practice before DHS.  *See id.*  Accordingly, it would not have altered the Board's determination that plaintiff was a "practitioner" subject to the disciplinary rules that govern practice before DHS, the Board, or immigration courts.  *See id.*; *see also* July 2005 Disciplinary Order, 23 I&N Dec. at 847 (Exh. 1, App. 0045).  Further, plaintiff's allegations concerning the back-story of the Florida disbarment proceedings neither changed the fact that he was disbarred in Florida nor demonstrated that the Florida proceedings were unfair.  *See* Reopening Order at 2 (Exh. 1, App. 0002).  Those facts would not require reevaluation of the July 2005 Disciplinary Order because the "rebuttable presumption" that reciprocal discipline should be imposed arises from the fact of plaintiff's disbarment.  8 C.F.R. § 1292.3(c)(3)(ii).  Accordingly, none of the purportedly "new" facts could be deemed "material."  *Id.* § 1003.2(c)(1).

The Board had no obligation to hold a hearing on the motion to reopen.  Section 1003.2 contemplates that a hearing may be held "*if the motion is granted.*" 8 C.F.R. § 1003.2(c)(1) (emphasis added).  However, it says nothing about holding a hearing in order to decide whether to grant the motion to reopen.  It simply provides that "[r]ulings on motions to reopen. . . shall be by written order."  *Id.* § 1003.2(I).  Thus, the Board's issuance of a written decision denying the reopening motion was consistent with the applicable regulations.

In sum, the Board's Reopening Decision was reasonable in all respects.  The Board properly construed plaintiff's motion as a motion to reopen the prior proceedings.  The Board also correctly determined that plaintiff had not established that a reopening was warranted.  Plaintiff simply failed to provide newly discovered material facts.  Accordingly, the Board's

denial of plaintiff's motion was not an abuse of discretion, and plaintiff cannot succeed on the merits of his appeal.

    **B.**    **Plaintiff's Motion Does Not Sufficiently Establish That The Continued Posting of the Websites Cause Him "Irreparable Harm"**

No injunction may issue in the absence of an "irreparable injury," no matter how strongly the other factors support the movant. *See CityFed Fin. Corp.*, 58 F.3d at 747; *Farris*, 453 F. Supp. 2d at 78. To be irreparable, an injury "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F. 2d 669, 674 (D.C. Cir. 1985); *see also Solidarity v. Sessions*, 929 F.2d 742, 745-46 (D.C. Cir. 1991). A plaintiff must make a "clear and convincing showing" to carry the burden of establishing irreparable harm. *Experience Works, Inc.*, 267 F. Supp. 2d at 96. As noted *supra*, that burden is particularly heavy when plaintiff seeks a mandatory injunction. *See Farris*, 453 F. Supp. 2d at 78. Thus this prong of the preliminary injunction analysis provides an additional basis for denying plaintiff's motion.

Plaintiff's mandatory injunction motion does not come close to satisfying that burden. Plaintiff's pleadings make the conclusory allegation that he will suffer an "irreparable injury" to his reputation unless defendants withdraw the internet postings that recount the Board's disciplinary sanctions. *See* Mot. for a Mandatory Injunction at 2 (Dkt. Entry 6); Mem. of Law In Support of Supp. to Mot. for Mandatory Injunction at 4-5 (Dkt. Entry 10). Although harm to reputation sometimes may support a finding of irreparable harm, "the showing of reputational harm must be concrete and corroborated, not merely speculative." *Trudeau v. Federal Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005) (finding no irreparable harm from FTC press release describing settlement of proceedings involving false advertising in plaintiff's

-19-

infomercials), *aff'd* 456 F.3d 178 (D.C. Cir. 2006).[5]  Here, plaintiff's motion cites no affidavits

or other sworn statements showing that the report of the suspension proceedings has caused

substantial harm to plaintiff's reputation.  That evidentiary shortcoming would be fatal in any

case.  *See id.*  But it is particularly problematic here, because plaintiff previously informed the

Board that he had "no objection to the publication of this case of first impression."  *See* Exh. 1,

App. 0036.  If the Board decision were as misleading as plaintiff now claims it to be, he

presumably would have objected to the publication of that decision when first asked.  Given that

plaintiff already had agreed that the Board's final decision should be made public, there is no

basis to infer that the posting of a link to that decision, and otherwise reporting that the

disciplinary sanctions were imposed, would cause plaintiff irreparable harm.

Plaintiff's failure to immediately seek removal of the web publications also counsels

against a finding of irreparable harm.  While a delay in seeking injunctive relief is not

dispositive, it "undercuts" an allegation of irreparable injury.  *Mylan Pharmaceuticals, Inc. v.

Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (addressing impact of 8 month delay in seeking

preliminary injunction).  The internet postings at issue were online long before plaintiff initiated

this action.  The press release was issued January 10, 2005, and plaintiff appears to have been

aware of it by August 2005, if not earlier.  *See* Exh. 2 (press release); Exh. 1, App. 0037 (letter

from Ramos noting that "a press release was also made a pat of [plaintiff's DC Bar] admissions

file").  The BIA Practice Manual provided that the disciplinary sanctions would be made public

on the EOIR website once Mr. Ramos had been expelled or suspended.  *See* BIA Practice

---

[5] The D.C. Circuit did not address this part of the district court's preliminary injunction analysis when affirming the court's denial of the preliminary injunction motion.  *See Trudeau v. FTC*, 456 F.3d at 182 n.2.

Manual § 11.8 (Exh. 2) ( http://www.usdoj.gov/eoir/vll/qapracmanual/pracmanual/chap11.pdf).

Further, the web postings simply repeat information contained in the Board's order, the

publication of which plaintiff consented to in August 2005.

>    **C.    Removing the Internet Publications That Report The Results of the
>           Disciplinary Proceedings Would Be Contrary to the Public Interest
>           and Would Cause Harm to Third Parties.**

The remaining two elements of the preliminary injunction analysis also counsel against

granting plaintiff's motion.  Plaintiff's memoranda of law focus on the harm the internet

publications allegedly cause him, and do not address the effect that removing those publications

would have on third parties or the public interest concerns raised by his motion.  However, the

Court must look beyond plaintiff's personal interests, and determine whether granting an

injunction would cause harm to third parties or would serve the public interest.  *See, e.g.*,

*Chaplaincy of Full Gospel Churches,* 454 F.3d at 297; *Serono Labs., Inc.*, 158 F.3d at 1318.

Here, the inclusion of plaintiff's name on the list of disciplined attorneys, with links to the

relevant Board disciplinary orders, furthers the public interest in the public disclosure of the

results of attorney disciplinary proceedings.  Requiring defendants to remove those postings

would undermine that interest, and cause harm to individuals who would otherwise be unaware

that the Board has deemed plaintiff ineligible to represent individuals in proceedings before the

Board, DHS, and immigration courts.  The interests of the public far outweigh any personal

interest Mr. Ramos may have in keeping these matters quiet.

Disbarment proceedings "are intended to protect the public from lawyers who engage in

unethical conduct."  *In re Asher*, 772 A.2d 1161, 1166 (D.C. 2001); *see also Charlton v. Federal*

*Trade Comm'n*, 543 F.2d 903, 904 (D.C. Cir. 1976) (noting that "disbarment [is] designed to

protect the public"). When an attorney is alleged to have misappropriated clients' funds, disbarment or other measures that prevent the attorney from practicing in a particular forum also implicate the "public confidence in the integrity of the profession and of the legal system." *In re Quimby*, 359 F.2d 257, 274 (D.C. Cir. 1966). Recognizing those public interest concerns, the regulations governing Board disciplinary proceedings provide that "[i]t will be in the public interest to impose disciplinary sanctions against a practitioner who . . . has engaged in criminal, unethical, or unprofessional conduct, or in frivolous behavior." 8 C.F.R. § 1003.101(a); *see also id.* (giving Board authority to impose disciplinary sanctions when it "finds it to be in the public interest to do so").

Banning the internet publication of the outcome of the Board's disciplinary proceedings against plaintiff would subvert those important public interests. The Board press releases reporting disciplinary actions and the EOIR list of disciplined attorneys put the public on notice that a practitioner has engaged in conduct that warranted disciplinary sanctions. Posting that information on the internet ensures that the information reaches individuals who might otherwise retain a suspended or expelled practitioner to prepare applications or otherwise represent them before the immigration courts, the Board, or DHS. In this case, the public has a right to know that Mr. Ramos has been expelled from practice in those forums, just as they have the right to be informed about the Board's discipline of other attorneys on the list. The need for public awareness of such matters led another court in this Circuit to conclude that there is a "strong public interest" in the public disclosure of information about FTC investigations into unfair or deceptive trade practices." *Trudeau*, 384 F. Supp. 2d at 298. In that context, public disclosure served the public interest because it was "essential" that members of the public "be informed in

-22-

some manner as to the identity of those most likely to prey upon [them] utilizing such prohibited conduct." *id.*; *Trudeau*, 456 F.3d at 192.  Those principles apply with equal force here.

For the same reasons, granting plaintiff's motion would cause harm to third parties. Forcing defendants to remove Mr. Ramos' name from the list of disciplined practitioners, and to remove the other internet postings at issue, would all but eliminate the public disclosure of the results of the disciplinary proceedings against him.  It would also set a disturbing precedent for other disciplined attorneys who might also seek court orders prohibiting the publication of their names on the list of disciplined attorneys, and the publication of the Board decisions concerning their disciplinary proceedings.  *See Trudeau*, 384 F. Supp. 2d at 298 (describing the chilling effect that would result if agencies were exposed to "burdensome and invasive litigation" each time a party disagreed with a press release's depiction of FTC proceedings").  In both respects, it would harm individuals with immigration matters pending before the immigration courts, the Board, or DHS, by increasing the risk that those individuals may inadvertently retain practitioners who have engaged in unethical, criminal, or unprofessional conduct.

## II.    THE COURT SHOULD AWARD SUMMARY JUDGMENT TO DEFENDANTS AND DENY PLAINTIFF'S REQUEST FOR A MANDATORY PERMANENT INJUNCTION.

To the extent plaintiff's motion seeks entry of a permanent mandatory injunction, it also must be denied.  At this stage of the proceedings, there is no basis on which to grant a permanent injunction.  Plaintiff has not filed a summary judgment motion.  The merits brief that plaintiff appears to have submitted in the D.C. Circuit proceedings is not among the materials the appellate court transmitted upon transfer of the case.  *See* Dkt. Entries 1-3.  Accordingly, plaintiff has never presented his legal theories to this Court, and therefore has not established

that he is entitled to a mandatory permanent injunction or any other relief.  Even if plaintiff's mandatory injunction motion could be construed as a motion for summary judgment — and it should not be — it would fail for the reasons discussed *supra*.

Instead, the Court should award summary judgment to defendants.  The Reopening Decision was rational and consistent with the applicable regulations, and was not based on impermissible factors such as race.  *See supra* Part I.A.  It follows that the Board did not abuse its discretion when denying plaintiff's motion, and that this Court must affirm the Board's ruling. *See, e.g.*, *Alizoti*, 477 F.3d at 453; *Sako*, 434 F.3d at 855-56.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a mandatory injunction should be

DENIED and defendants' motion for summary judgment should be GRANTED.

Dated: May 10, 2007                    Respectfully submitted,


                                       _____/s/ by RMM_____
                                       JEFFREY A. TAYLOR, D.C. BAR # 498610
                                       United States Attorney

                                       _____/s/ by RMM_____
                                       RUDOLPH CONTRERAS, D.C. BAR #434122
                                       Assistant United States Attorney


                                       _____/s/ Robin M. Meriweather_____
                                       ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                       Assistant United States Attorney
                                       555 Fourth St., N.W.
                                       Washington, D.C.  20530
                                       Phone: (202) 514-7198
                                       Fax: (202) 514-8780
                                       Robin.Meriweather2@usdoj.gov

                                       **Of Counsel:**

                                       JENNIFER BARNES
                                       Bar Counsel
                                       United States Department of Justice, Executive
                                       Office for Immigration Review

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2007, I caused the foregoing Motion for

Summary Judgment, Memorandum of Law and Statement of Material Facts to be filed and

served via the Court's Electronic Case Filing system, or, should I receive notice from the Court

that electronic service upon plaintiff failed, by first-class mail, postage prepaid, addressed as

follows:

Anthony E. Ramos
1805 Key Blvd
Apartment 513
Arlington, VA 22201

_____/s/__Robin M. Meriweather_____

ROBIN M. MERIWEATHER, D.C. Bar # 490114

-26-

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
ANTHONY E. RAMOS                          )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )   Case Number:  1:06CV01941(RMU)
                                          )
UNITED STATES DEPARTMENT OF JUSTICE,  )
et al.,                                   )
                                          )
                    Defendants.           )
                                          )
_____  )

## DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants United States Department of Justice, Executive Office for Immigration Review ("EOIR"), and the Board of Immigration Appeals ("BIA" or the "Board"), through undersigned counsel, respectfully file this Statement of Material Facts, pursuant to Local Rules 7(h) and 56.1, in support of their motion for summary judgment. The following material facts support summary judgment:

1.      DHS initiated the disciplinary proceedings against plaintiff by issuing a Notice of Intent to Discipline on October 21, 2004. *See In re Ramos*, 23 I & N Dec. at 844 (Exh. 1, App. 0042).[6]

_____

[6] The portions of the administrative record relevant to defendants' summary judgment motion and plaintiff's Mandatory Injunction Motions are included in an appendix attached as Exhibit 1 to defendants' motion for summary judgment motion and supporting memorandum of law. Defendants will submit a comprehensive administrative record to the Court as soon as the relevant materials have been gathered and assembled.

2.      The Notice of Intent to Discipline alleged that plaintiff had been disbarred in the State of

Florida, and that reciprocal discipline was warranted under 8 C.F.R. §§ 292.3(c)(1) and

1292.3(c)(1).  *See In re Ramos*, 23 I&N Dec. at 844 (Exh. 1, App. 0042).

3.      In addition, DHS filed a petition for immediate suspension from practice before DHS.

*See In re Ramos*, 23 I&N Dec. at 844 (Exh. 1, App. 0042).

4.       On November 4, 2004, the EOIR Office of General Counsel requested that plaintiff also

be suspended from practice before the Board and immigration courts.  *See In re Ramos*,

23 I&N Dec. at 844-45 (Exh. 1, App. 0042-0043).

5.      The Board granted the petition for immediate suspension on December 6, 2004.  *See* Exh.

1, App. 0050 (Dec. 6, 2004 Board Order).

6.      The Board then forwarded the record to an immigration judge, who served as the

"adjudicating official" in this case.  *See In re Ramos*, 23 I & N Dec. at 845 (Exh. 1, App.

0043); *see also* 8 C.F.R. §§ 292.3(f), 1292.3(f).

7.      The immigration judge determined that plaintiff should be expelled from practice before

the Board, immigration courts, and DHS, and issued an expulsion order March 21, 2005.

*See* Exh. 1, App. 0047-0048 (hereafter "Mar. 2005 Order").

8.      In the proceedings before the immigration judge, plaintiff did not contest that he had

been disbarred. *See* Mar. 2005 Order at 2 (Exh. 1, App. 0048).  Instead, he focused

exclusively on the Board's jurisdiction to sanction him, arguing that he was not a

member of an immigration bar.  *See id.*

9.    The Board rejected plaintiff's jurisdictional arguments — *i.e.*, plaintiff's allegation that

he had not practiced immigration law —  when granting the petition for immediate

suspension.  *See* Dec. 6, 2004 Order at 1-2 (Exh. 1, App. 0049-0050).

10.    The immigration judge concluded that no hearing was necessary in the disciplinary

proceedings, and that plaintiff should be expelled from practice before the Board,

immigration courts, and DHS.  *See* March 2005 Order at 2 (Exh. 1, App. 0050).

11.    Plaintiff appealed the immigration judge's ruling to the Board.  *See* 23 I&N Dec. at 844

(Exh. 1, App. 0042).

12.    The Board affirmed the immigration judge's expulsion of plaintiff from practice in a

decision issued July 25, 2005 and amended (to make editorial changes) November 15,

2005.  *See* 23 I&N Dec. at 844 (Exh. 1, App. 0042).

13.    The Board concluded that "clear, unequivocal, and convincing evidence establishes that

it is in the public interest to discipline the respondent, based on the final order of

disbarment issued by the Supreme Court of Florida on December 18, 1997."  *See* 23 I&N

Dec. at 848 (Exh. 1, App. 0046).

14.    USCIS requested that the Board publish its decision.  *See* Exh. 1, App. 0039.

15.    Plaintiff was aware of that request, and sent the Board a letter stating that he had "no

objection to the publication of this case of first impression."  Exh. 1, App. 0036.

16.    Four months after plaintiff consented to the publication of the final disciplinary order, he

filed a motion for reconsideration, which the Board denied.  *See* Exh. 1, App. 0033-0034.

17.    Plaintiff filed a "motion to vacate" and "motion for evidentiary hearing," which DHS

opposed.  *See* Exh. 1, App. 0003-0032.

18. The Board construed plaintiff's submissions as a motion to reopen, and denied the

motion in an order issued June 7, 2006. *See* Exh. 1, App. 0001-0002 ("Reopening

Order"). The Board concluded that plaintiff's motion repeated arguments that the Board

had already rejected, and failed to submit "newly discovered evidence" that would

warrant reopening the Board's prior decisions. Reopening Order at 2 (Exh. 1, App.

0002).

19. Plaintiff filed a petition for review in the United States Court of Appeals for the D.C.

Circuit, challenging the Board's June 7, 2006 Reopening Order. *See* Dkt. Entries 1-3.

20. The D.C. Circuit determined that it lacked jurisdiction over plaintiff's claims, and

therefore transferred the case to this Court. *See* Dkt. Entries 1-3.

Dated: May 10, 2007                                  Respectfully submitted,


                                          _____/s/ by RMM_____
                                          JEFFREY A. TAYLOR, D.C. BAR # 498610
                                          United States Attorney

                                          _____/s/ by RMM_____
                                          RUDOLPH CONTRERAS, D.C. BAR #434122
                                          Assistant United States Attorney


                                          _____/s/ Robin M. Meriweather_____
                                          ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                          Assistant United States Attorney
                                          555 Fourth St., N.W.
                                          Washington, D.C.  20530
                                          Phone: (202) 514-7198
                                          Fax: (202) 514-8780
                                          Robin.Meriweather2@usdoj.gov

                                          **Of Counsel:**

                                          JENNIFER BARNES
                                          Bar Counsel

United States Department of Justice, Executive
Office for Immigration Review

# EXHIBIT ONE

## (APPENDIX OF EXCERPTS FROM ADMINISTRATIVE RECORD)

Case 1:06-cv-01941-RMU    Document 1-3    Filed 11/14/2006    Page 1 of 35

U.S. Department of Justice
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  D2003-016

Date:  JUN - 7 2006

In re:  ANTHONY E. RAMOS, ATTORNEY

IN PRACTITIONER DISCIPLINARY PROCEEDINGS

MOTION

ON BEHALF OF DHS:  Rachel A. McCarthy
                          Associate Ethics Officer

ON BEHALF OF GENERAL COUNSEL:  Jennifer J. Barnes, Bar Counsel

ON BEHALF OF RESPONDENT: Olekanma A. Ekekwe, Esquire


ORDER:

     PER CURIAM.  The respondent, Anthony E. Ramos, submitted a "Motion To Vacate Disciplinary Orders" and a "Request For Evidentiary Hearing On Motion To Vacate Disciplinary Orders" on February 3, 2006, that were rejected for a filing defect, and filed on April 6, 2006. The filings will be construed as a motion seeking to have the Board reopen its final order in this case. The motion, which is opposed by the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service), who instituted this case, will be denied.

     On July 25, 2005, we reached a final decision in this case which was published, as amended, on November 15, 2005. *See Matter of Ramos*, 23 I&N Dec. 843, 843-848 (BIA 2005). We affirmed a March 17, 2005, decision of an Immigration Judge, acting as the adjudicating official in this case, ordering the respondent expelled from practice before the Immigration Courts, Board of Immigration Appeals, and DHS. This result stemmed from the fact that on December 18, 1997, the respondent was disbarred by the Supreme Court of Florida. On February 2, 2006, we declined to reconsider our order.

     First, as we noted in our February 2, 2006, decision, the respondent's position is in direct contradiction to his previous position in this case. On July 28, 2005, the DHS attorney sent a letter to the Board seeking to have its decision published. A copy of the letter was sent to Ramos. He responded by sending his own letter to the Board on August 2, 2005, in which he stated that he had "no objection to publication of this case of first impression" and further noted that he "will not pursue the matter further". The respondent had the opportunity to file a motion to reconsider, or motion to reopen, after we issued our July 25, 2005, decision, but did not do so, only filing his motions after the Board published its decision on November 15, 2005.

     In any event, the pending motion is without merit. The respondent accuses the government of fraud and making false statements. We have rejected these claims in our decision on appeal, and in the motion to reconsider. We properly determined that the Immigration Judge did not err by issuing his decision without a hearing, as the respondent's pre-hearing statement failed to show that a

hearing was necessary. There are no issues of material fact that would necessitate a hearing in this case. The final order of disbarment creates a rebuttable presumption that disciplinary sanctions should follow. 8 C.F.R. § 1292.3(c)(3). The respondent failed to present anything to suggest that the Florida proceedings were unfair. The respondent identified no issues that would require an evidentiary hearing. *Matter of Ramos, supra,* at 847-48.

The supposed "newly discovered evidence" that the respondent references in the pending motion to reopen does not cause us to reopen our prior decisions in this case. For example, the respondent presents a January 17, 2003, letter from the Executive Office for Immigration Review, Office of General Counsel, Bar Counsel to an attorney with the Florida Bar. Bar Counsel notes that the respondent "has never appeared as the attorney of record in any cases before EOIR." Therefore, the matter was properly referred by Bar Counsel to the now-DHS, who instituted this case. As we stated in our final decision in this case, the respondent clearly "practiced" before the DHS, by submitting numerous "Notice of Entry of Appearance As An Attorney or Representative" (G-28) forms to the DHS, in which he claimed to be an "agent" for the party appearing before the DHS. *Matter of Ramos, supra,* at 847.

As the DHS correctly observes, the respondent's motion contains unsupported allegations that have previously been rejected by the Board. The respondent's motion is, therefore, denied.

FOR THE BOARD

- 2 -

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

In the Matter of                    )
                                    )
                                    )
ANTHONY ELADIO RAMOS,               )
                                    )
      Respondent                    )
                                    )
                                    )
_____   )

## RESPONDENT, ANTHONY E. RAMOS,' SECOND SUPPLEMENT TO MOTION TO VACATE DISCIPLINARY ORDERS

COMES NOW the Respondent, Anthony E. Ramos, by and through the undersigned

attorney, and files this Second Supplement to Motion to Vacate Disciplinary Orders, and

states:

1. Mr. Ramos realleges and readopts all prior allegations in his Motion to Vacate

Disciplinary Orders.

2. Mr. Ramos attaches to this Second Supplement, a copy of the permanent residence

card of Antonio Ferreira

3. The card is relevant because Respondent believes that he was denied due process and

was, thus, unjustly disciplined by this tribunal. Specifically, counsel for BIA, in support

of her motion, falsely filed 'Rejection' notices for the case of Mr. Ferreira. Mr. Ramos

believes that this tribunal relied on those false documents to his detriment and to the

detriment of this tribunal.

4. Mr. Ramos continues to assert that this tribunal may have been given misinformation,

which it relied on to make a decision, which unjustly disciplined Mr. Ramos.

5. As a result of this additional new information, Mr. Ramos hopes that this tribunal

would schedule this matter for an evidentiary hearing, so that Mr. Ramos would be given

the opportunity for due process.

WHEREFORE, Mr. Ramos requests the entry of an order granting his Motion to Vacate

Disciplinary Orders.

RESPECTFULLY SUBMITTED,

Olekanma A. Ekekwe, Esquire
717 D Street, NW
Suite 314
Washington, DC 20004
202-783-1750
D.C. bar #: 479967

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the twenty-eighth day of April, 2006, the original of this
Motion to Vacate Disciplinary Orders was mailed to Jessica McAllum, Clerk's Office,
Board of Immigration Appeals, PO Box 8530, Falls Church, VA 22041; and that a copy
was mailed to: Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS, 70
Kimball Avenue, Room 103, S. Burlington, VT 05403; and to Jennifer Barnes, Esquire,
Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church,
VA 22041.

Olekanma A. Ekekwe

App. 0004



# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

In the Matter of )
)
)
ANTHONY ELADIO RAMOS , )
)
Respondent )
)
_____ )

BOARD OF IMMIGRATION APPEALS OFFICE OF THE CLERK

2006 APR 25 A 10:59

RECEIVED DEPARTMENT OF JUSTICE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

## RESPONDENT, ANTHONY E. RAMOS,' FIRST SUPPLEMENT TO MOTION TO VACATE DISCIPLINARY ORDERS

COMES NOW the Respondent, Anthony E. Ramos, by and through the undersigned attorney, and files this First Supplement to Motion to Vacate Disciplinary Orders, and states:

1. Mr. Ramos realleges and readopts all prior allegations in his Motion to Vacate Disciplinary Orders.

2. Mr. Ramos attaches to this First Supplement, a copy of an email, recently obtained through a Freedom of Information Act request.

3. The email is relevant because Respondent believes that he was denied due process and was, thus, unjustly disciplined by this tribunal.

4. Mr. Ramos continues to assert that this tribunal may have been given misinformation, which it relied on to make a decision, which unjustly disciplined Mr. Ramos.

5. As a result of this additional new information, Mr. Ramos hopes that this tribunal would schedule this matter for an evidentiary hearing, so that Mr. Ramos would be given the opportunity for due process.

WHEREFORE, Mr. Ramos requests the entry of an order granting his Motion to Vacate

Disciplinary Orders.

RESPECTFULLY SUBMITTED,

Olekanma A. Ekekwe, Esquire
717 D Street, NW
Suite 314
Washington, DC 20004
202-783-1750
D.C. bar #: 479967


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the twenty-fourth day of April, 2006, the original of this Motion to Vacate Disciplinary Orders was mailed to Jessica McAllum, Clerk's Office, Board of Immigration Appeals, PO Box 8530, Falls Church, VA 22041; and that a copy was mailed to: Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS, 70 Kimball Avenue, Room 103, S. Burlington, VT 05403; and to Jennifer Barnes, Esquire, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041.

Olekanma A. Ekekwe

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2006 APR 25  A 10: 59

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

App. 0007

Lotus cc:Mail for Rachel A McCart

**Date:** 11/17/2005 11:10 AM
**Sender:** "Dix; Christopher" <SMTP:CDix@DCCA.STATE.DC.US>
**To:** "McCarthy
Rachel A" <SMTP:Rachel.Mccarthy@dhs.gov>
**bcc:** Rachel A McCarthy
**Priority: Normal**
**Subject:** FINAL ORDER FROM BIA ON RAMOS
Author: "Dix; Christopher" <SMTP:CDix@DCCA.STATE.DC.US> at HQ-IRM-001
Date:   11/17/2005 11:10:00 AM
Priority: Normal
bcc: Rachel A McCarthy at ERO-002
To: "McCarthy; Rachel A" <SMTP:Rachel.Mccarthy@dhs.gov> at HQ-IRM-001
Subject: FINAL ORDER FROM BIA ON RAMOS
Thank You!

We held Mr. Ramos' formal hearing(s) in Oct and Nov.  They each lasted 4
hours.  Normally it only takes one hearing which lasts about 2-3 hrs.
Our Committee is still waiting on some submissions from him prior to
filing its report with the Court.  I'll send you a copy after it gets
filed.

FYI re the above information: On the record, Mr. Ramos elected to make
his hearing public.

Chris

Christopher C. Dix
Deputy Director
Committee on Admissions
500 Indiana Avenue NW, Room 4200
Washington, DC 20001
(202) 879-2715
cdix@dcca.state.dc.us


-----Original Message-----
From: McCarthy, Rachel A [mailto:Rachel.Mccarthy@dhs.gov]
Sent: Thursday, November 17, 2005 10:08 AM
To: Dix, Christopher
Subject: Maybe STA Spam FINAL ORDER FROM BIA ON RAMOS



Rachel A. McCarthy
Associate Ethics Officer
U.S. Citizenship and Immigration Services
70 Kimball Avenue, Room 103
S. Burlington, VT  05403
(802) 660-5043, ext. 5437 (phone)
(802) 660-5067 (FAX)

8

717 D Street, NW
Suite 314
Washington, D.C. 20004
202-783-1750
Fax: 202-783-1751
academlaw@yahoo.com

**Law Office of Olekanma
A. Ekekwe**

## EX PARTE SHEET

To: Clerk of Tribunal

From: Olekanma A. Ekekwe, Esquire

cc: Jennifer Barnes, Esquire and Rachel McCarthy, Esquire

Date:    April 15, 2006

Re:    Ramos v. United States/ D2003-016

_____

Dear Clerk:

Enclosed for filing and consideration by the Tribunal, relative to the above-captioned, please find the following:

   1. **RESPONDENT, ANTHONY E. RAMOS,' REPLY TO RESPONSE OF USCIS TO MOTION TO VACATE DISCIPLINARY ORDERS**

Thank you.

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

APR 20 2006

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

1

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| | ) |
| ANTHONY ELADIO RAMOS, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| ——————————— | ) |

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
APR 30 2004
BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

## RESPONDENT, ANTHONY E. RAMOS,' REPLY TO RESPONSE OF USCIS TO MOTION TO VACATE DISCIPLINARY ORDERS

COMES NOW the Respondent, Anthony E. Ramos, by and through counsel, and files this Reply to Response of USCIS to Motion to Vacate Disciplinary Orders, and states that it is really in the best interest of justice that this Tribunal vacate disciplinary orders. Mr. Ramos states the following in support :

1. Mr. Ramos incorporates all previously filed documents on this matter.

2. Disciplinary Orders should be vacated because reciprocal discipline does not apply in this matter.

2. The tribunal issued disciplinary order is based on what is believed to misrepresentation and/or inaccurate information. Mr. Ramos had not practice as an attorney before the immigration court.

3. Presumably, when this Tribunal set an evidentiary hearing, Mr. Ramos would be given an opportunity to conduct necessary discovery on all issues.

4. With proper discovery, this Tribunal would be able to have all necessary information in order to avoid what Mr. Ramos considers a denial of due process based on misrepresentation and/or misinformation.

5.     Hence, Mr. Ramos respectively request that this Tribunal vacate disciplinary orders in the interest of justice and in light of the new emerged facts that Mr. Ramos had not practice before the immigration court consequently not subject to disciplinary orders.

RESPECTFULLY SUBMITTED,

Olekanma A. Ekekwe, Esquire
717 D Street, NW
Suite 314
Washington, DC 20004
202-783-1750
D.C. bar #: 479967

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the nineteenth day of April, 2006, the original of this Motion to Vacate Disciplinary Orders was mailed to Jessica McAllum, Clerk Office, Board of Immigration Appeals, PO Box 8530, Falls Church, VA 22041; and that a copy was mailed to: Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS, 70 Kimball Avenue, Room 103, S. Burlington, VT 05403; and to Jennifer Barnes, Esquire, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041.

Olekanma A. Ekekwe



SUBURBAN PADC

MD 208  5 L
19 APR 2005  PM

Clerk, Board of Immigration Appeals
PO Box 8530
Falls Church, VA 22041

22041+8530  8099    |...|.|.|.|.||.....||..|.|.|.|..||.|..|.|.|..||.|.....|.||

Law Office of Olekanma A. Ekekwe
717 D Street, NW
Suite 314
Washington, DC 20004

Rachel A. McCarthy
Ethics Counsel
U.S. Citizenship and Immigration Services
70 Kimball Avenue, Room 103
S. Burlington, VT  05403


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS


In the Matter of          )
                          )
ANTHONY ELADIO RAMOS      )
                          )          Disciplinary Case #D 2003-016
        Respondent        )
                          )
In disciplinary proceedings )
                          )

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2003 APR 13  P 2 35

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK


## USCIS RESPONSE TO RESPONDENT, ANTHONY E. RAMOS,' MOTION TO VACATE DISCIPLINARY ORDERS

Anthony Eladio Ramos
D2003-016

U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security

(DHS), through its undersigned counsel, respectfully submits its Response to

Respondent, Anthony E. Ramos' Motion to Vacate Disciplinary Orders, and states:

1.    USCIS incorporates its February 7, 2006 pleading entititled, "USCIS
      RESPONSE TO RESPONDENT, ANTHONY E. RAMOS,' MOTION TO
      VACATE DISCIPLINARY ORDERS AND REQUEST FOR
      EVIDENTIARY HEARING" as though fully set forth herein.

USCIS respectfully requests that the Board deny Respondent, Anthony E. Ramos'

Motion to Vacate Disciplinary Orders, without a hearing.

                              Respectfully submitted,

DATED: April 12, 2006

                              DEA CARPENTER
                              ACTING CHIEF COUNSEL

                              RACHEL A. McCARTHY
                              Ethics Counsel
                              U.S. Citizenship and Immigration Services
                              70 Kimball Avenue, Room 103
                              S. Burlington, VT 05403
                              802) 660-5043, ext. 5437
                              (802) 660-5067 (FAX)

RECEIVED
DEPARTMENT OF JUSTICE-
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
2006 APR 13 P 2: 35
BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK



Anthony Eladio Ramos
D2003-016

## PROOF OF SERVICE

On April 11, 2006, I, Rachel A. McCarthy, mailed a copy of the <u>USCIS RESPONSE TO RESPONDENT, ANTHONY E. RAMOS,' MOTION TO VACATE DISCIPLINARY ORDERS</u> to Olekanma A. Ekekwe, Esq., 717 D. Street NW, Suite 314, Washington, DC 20004; Jennifer Barnes, BOIR Bar Counsel, at the following address: Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041; and to George Martin, Acting Chief Appellate Counsel, Department of Homeland Security, 5113 Leesburg Pike, Suite 200, Falls Church, VA 22041 by first class mail, postage prepaid.

Rachel A. McCarthy, Esq.
Ethics Counsel

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2006 APR 13 P 2 35

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

In the Matter of                    )
                                    )
                                    )
ANTHONY ELADIO RAMOS,               )
                                    )
        Respondent                  )
                                    )
_____   )

**RESPONDENT, ANTHONY E. RAMOS,' MOTION TO VACATE
DISCIPLINARY ORDERS**

COMES NOW the Respondent, Anthony E. Ramos, by and through the undersigned

attorney, and files this Motion to Vacate Disciplinary Orders, and states:

1. On December 4, 2004, the Board of Immigration Appeals (hereinafter BIA) issued an

order of suspension in this cause.

2. On March 17, 2005, an Order was entered, expelling the Respondent from "practice

before the Immigration Courts, the Board of Immigration Appeals and the Department of

Homeland Security," based upon a theory of reciprocal discipline.

3. The Order states that: "This request for reciprocal suspension was brought by the

Department of Homeland Security (DHS) and the Executive Office for Immigration

Review (EOIR)."

4. Newly discovered evidence, which could only have been obtained through recently

produced documents, as a result of a Freedom Of Information Act (FOIA) request, shows

that counsel for petitioners, BIA and EOIR committed a fraud upon this tribunal in both

their allegations and their alleged proof.

5. Both of the petitioners made intentional and false statements to this tribunal, in order to secure the disciplinary orders against the Respondent.

6. The known history of the actions of counsel for both petitioners dates to approximately, January, 2003. On January, 13, 2003, the Florida Bar, through then Fort Lauderdale, Florida Bar Staff Counsel, Eric Turner, sent a letter to Jennifer Barnes, ethics counsel for EOIR. Turner's letter enclosed an alleged 'complaint' against the Respondent. The purpose of the Turner letter was so that Turner could obtain sanctions against the Respondent. Once obtained, Turner's plan was to use any orders from this tribunal to recruit the State Attorney in Florida, for some type of alleged prosecution of the Respondent in Florida. In an email, dated January 31, 2005, to BIA counsel, Rachel McCarthy, Turner specifically states: "Rachel: Thanks for the order. I will forward it to our state attorney and see if they will prosecute now."

7. In response to Turner's letter, Barnes, who is also the attorney who appeared and filed pleadings in this action on behalf of the EOIR, responded to Turner, by letter dated January 17, 2003. Barnes stated unequivocally: "After a thorough search of our database, we have determined that Mr. Ramos has never appeared as the attorney of record in any cases before EOIR. Consequently, we have no authority to initiate a preliminary inquiry into the matter."

8. Notwithstanding the statement to Turner, Barnes proceeded to and continued to make false statements to this tribunal, which this tribunal relied on in reaching its decision. Barnes knew that EOIR and DHS had no standing to enter into these proceedings, and further that, even assuming standing; no issue was ripe for litigation in this matter. Specifically, Barnes joined in every pleading which was filed by immigration in this case, including, but not limited to the "Government's Motion to Join for Reciprocal

Discipline," and the "Government's Motion to Broaden the Scope of the Petition for

Immediate Suspension," both filed on November 4, 2004.

9. At some point after the Barnes letter to Turner, according to reconstructed emails

produced from the FOIA production, Turner came into contact with McCarthy. McCarthy

had access to the same database as did Barnes, and thus to the same search.

8. Turner recruited McCarthy by emailing to McCarthy, not only the order which

disbarred the Respondent in Florida, but also a now discredited, and highly disparaging

Report of Referee. Turner, however, intentionally failed to disclose to McCarthy, critical

facts concerning the disbarment, and the events which occurred after the disbarment,

including but not limited to:

     a) Turner's knowledge of a fax contained in the Respondent's Florida file,

showing a secret hearing on the Friday before the Monday of the final hearing, wherein

the Respondent's counsel withdrew from his case without notice;

     b) The Report of the court-appointed CPA showing full and complete restitution

by the Respondent, plus the payment of interest;

     c) The subsequent Report of the Referee, commending the Respondent for making

full restitution;

     d) The subsequent commendation on the record, in open court, by the same

Referee, of the Respondent, for making full restitution.

9. McCarthy, without making further inquiry, accepted Turner's documents at face value.

At some point, McCarthy conspired to assist Turner in his efforts against the Respondent.

10. McCarthy then filed the initial pleadings in this action in late 2004. At the time the

Respondent received the pleadings, he immediately contacted McCarthy, to inquire as to

the source of the allegations. At that time, McCarthy stated, falsely, that she had

discovered the alleged violations of immigration regulations through a 'general computer



search.' Respondent then advised McCarthy that, no such search could yield any such result, since Respondent, as has now been confirmed by the Barnes letter, had never made an immigration appearance. McCarthy indicated that, in any event, she was continuing with the case.

11. Irrespective of the lack of evidence, McCarthy then, continued with the case, making false allegations against the Respondent, and using counterfeit immigration documents which she created, so that this tribunal would rely on same. In addition, McCarthy, falsely alleged, but throughout refused to produce, that the Respondent signed one hundred twenty two notices of appearance. In addition, and perhaps more extreme, McCarthy was successful in having this tribunal rely on the deliberately created counterfeit documents.

12. Once McCarthy obtained the initial order of suspension, according to emails obtained from the FOIA request, she immediately provided a copy to Turner.

13. Prior to the entry of the order of expulsion, the Respondent complied with each and every directive of this tribunal, and made every effort to obtain discovery of documents which would clear him. In each and every case, with the knowledge that the Respondent had never appeared before EOIR, Barnes and McCarthy objected to Respondent's attempts to obtain discovery. The basis for the objections was so that they could continue the fraud upon this tribunal, since compliance with the discovery would have revealed, among other things, the Barnes letter to Turner, and the absence of the one hundred twenty two alleged notices of appearances.

14. In fact, because the Regulations do not provide for discovery, the Respondent was left only with subpoena power to obtain documents. Before he could begin, however, and in reliance on the false jurisdictional allegations of both Petitioners, this tribunal ruled, incorrectly, based on the false allegations of the petitioners, that it, in fact, had

jurisdiction. The actions of Barnes and McCarthy caused severe prejudice to the Respondent, and also led this tribunal to misinterpret the Respondent's compliance with this tribunal's pre-trial order.

15. This tribunal, despite repeated protestations by the Respondent over the issue of lack of jurisdiction over the Respondent, specifically made a jurisdictional ruling in sole reliance on the false allegations of the Petitioners, and without ever taking any evidence on that issue.

16. The prejudice was made more severe by this tribunal's failure to hold a hearing on the merits, where, among other things, the Barnes letter, the emails, the absence of the one hundred twenty two alleged notices of appearance, and the counterfeit documents, would all have been admitted. In addition, substantial evidence on the issue of reciprocal discipline, assuming this tribunal would have continued after taking evidence on the fraud issue, would have resulted in a finding of no reciprocal discipline. For example, since McCarthy's manufacture of fake immigration documents concerning Antonio Ferreira, his permanent residency has been approved. A copy of the most recent letter on his case is attached to this motion.

17. At all times material hereto, Barnes and McCarthy knew that their pleadings were false, that the Respondent had never made an appearance before EOIR, and that this tribunal would, and did rely on her statements to the detriment of not only this tribunal, but also of the Respondent.

18. The Petitioners made false statements of fact, to this tribunal.

19. This tribunal relied on those statements in making each and every ruling in this cause.

20. This tribunal's reliance on the false statements of the Petitioners led directly to the adverse rulings in this cause.

21. This tribunal's orders should, therefore, be vacated and this matter should proceed to discovery, through subpoena and deposition, and to a hearing on all issues.

WHEREFORE, the Respondent requests the entry of an order granting his Motion to Vacate Disciplinary Orders.

RESPECTFULLY SUBMITTED,

Olekanma A. Ekekwe, Esquire
117 D Street, NW
Suite 314
Washington, DC 20004
202-783-1750
D.C. bar #: 479967

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the fourth day of April, 2006, the original of this Motion to Vacate Disciplinary Orders was mailed to Jessica McAllum, Clerk's Office, Board of Immigration Appeals, PO Box 8530, Falls Church, VA 22041; and that a copy was mailed to: Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS, 70 Kimball Avenue, Room 103, S. Burlington, VT 05403; and to Jennifer Barnes, Esquire, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041.

Olekanma A. Ekekwe

Lotus ccMail for Rachel A McCarthy

Date:   1/31/2005 4:12 PM
Sender: "sturner@flabar.org" <SMTP:sturner@flabar.org>
To:     "McCarthy
        Rachel A" <SMTP:Rachel.Mccarthy@dhs.gov>
bcc:    Rachel A McCarthy
Priority: Normal
Subject: Re: FAX OF EOIR ORDER
        Author: "sturner@flabar.org" <SMTP:sturner@flabar.org> at HQ-IRM-001
        Date:   1/31/2005 4:12:00 PM
        Priority: Normal
        bcc: Rachel A McCarthy at ERC-002
        To: "McCarthy, Rachel A" <SMTP:Rachel.Mccarthy@dhs.gov> at HQ-IRM-001
        Subject: Re: FAX OF EOIR ORDER

Rachel

thanks for the order. I will forward it to our state attorney and see if they
will prosecute now.

Good luck.

Eric W. Turner
Chief Branch Discipline Counsel
Fort Lauderdale

"McCarthy, Rachel A" <Rachel.Mccarthy@dhs.gov>

01/31/2005 03:34 PM

To
sturner@flabar.org

cc

Subject
FAX OF EOIR ORDER

Exhibit
1



Eric -
sorry about the confusion. The order of the Board is two pages.

Rachel McCarthy

1



U. S. Department of Justice

Executive Office for Immigration Review

*Office of the General Counsel*

Bar Counsel

5107 Leesburg Pike, Suite 2600
Falls Church, Virginia 22041

January 17, 2003

Eric M. Turner
Chief Branch Disciplinary Counsel
The Florida Bar
Cypress Financial Center, Suite 835
5900 North Andrews Avenue
Ft. Lauderdale, Florida

RE: OGC/Ramos
U2003-016

Dear Mr. Turner:

This office is in receipt of a disciplinary complaint that you filed on behalf of The Florida Bar against Anthony Eladio Ramos. At this stage, the matter is confidential under the Rules and Procedures of Professional Conduct for Practitioners ("Rules"), 8 C.F.R. § 3.108, except for necessary disclosures in the course of our preliminary inquiry.

In sum, you state Mr. Ramos was disbarred by the Supreme Court of Florida on December 22, 1997, but has continued to practice immigration law through an organization known as "All American Immigration Association" in West Palm Beach, Florida.

Please be advised that the Executive Office for Immigration Review ("EOIR") has disciplinary jurisdiction over practitioners where the conduct involves a matter before the immigration courts or the Board of Immigration Appeals (e.g., removal proceeding). By contrast, the Immigration and Naturalization Service ("Service") has disciplinary jurisdiction over immigration practitioners where the conduct involves a matter before that agency (e.g., visa petition).

After a thorough search of our database, we have determined that Mr. Ramos has never appeared as the attorney of record in any cases before EOIR. Consequently, we have no authority to initiate a preliminary inquiry into the matter. Given that Mr. Ramos appears to be conducting his immigration practice in cases handled by the Service, we have forwarded a copy of your complaint to the Service for whatever purpose it deems appropriate.

Sincerely,

Jennifer J. Barnes
Bar Counsel

Exhibit 2

cc:    Roger Segerman (w/enclosure)
       Appellate Counsel's Office
       Immigration and Naturalization Service
       5113 Leesburg Pike
       Room 200
       Falls Church, VA. 22041

3

App. 0023



PROCESSED FOR I-551
TEMPORARY EVIDENCE OF
LAWFUL ADMISSION FOR
PERMANENT RESIDENCE
VALID UNTIL 19 march 2007
EMPLOYMENT AUTHORIZED



**U.S. DEPARTMENT OF HOMELAND SECURITY**
Citizenship and Immigration Services
7880 Biscayne Boulevard
Miami, Florida 33138

The seal which appears in your passport or I-94 is temporary evidence that your Legal Permanent Resident status has been approved.    The seal is valid for one year from the date your application was approved.  You should receive your Alien Resident Card prior to the expiration of this temporary evidence.    If you do not receive your Alien Resident Card within this time or if you should have a change of address, you should advise the Service by mail or present yourself to the nearest U.S. Citizenship and Immigration Services Office to advise of non-receipt or register your change of address.

El sello que aparece en su pasaporte o I-94 es evidencia temporaria que su Residencia ha sido aprobada.  El sello es válido por un año a partir de la fecha en que su aplicación fué aprobada.  Su tarjeta de Residencia será enviada por correo y la recibirá antes de que se expire la evidencia temporaria.   Si su tarjeta no le ha llegado antes del vencimiento de la evidencia temporaria ó si tiene un cambio de dirección antes de recibir la tarjeta de Residencia, deberá avisar por escrito o presentarse a la Oficina de Ciudadanía y Servicios Inmigratorios mas cercana para registrar tal cambio.

So ki nan paspò-a oubyin ti kat I-94-a cégnon prèv tamporé ké pèmanan résidens-ou approuvé.  So ca-a valab pou in nan de dàt ké aplikasyon-an té approuvé.  Ou si pozé résévwa kàt residans-lan anvan ké so ki nan paspò-a expiré. Si oupa résévwa kàt residans lan anvan ké so ki nan paspò-a expiré, oubyin si ou changé adrès, vini nan offis imigrasyon ki pi pré-ou, pou fè reklamasyon ou-byin changé adrès-ou.

Exame 10/18/2003

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

In the Matter of                )
                                )
                                )
ANTHONY ELADIO RAMOS            )
                                )
        Respondent              )
                                )
                                )
_____ )

## RESPONDENT, ANTHONY E. RAMOS,' REQUEST FOR EVIDENTIARY HEARING ON MOTION TO VACATE DISCIPLINARY ORDERS

COMES NOW the Respondent, Anthony E. Ramos, by and through the undersigned attorney, and files this Request for Evidentiary Hearing on Motion to Vacate Disciplinary Orders, and states:

1. The Respondent has filed a Motion to Vacate Disciplinary Orders.

2. In order that this tribunal may have the benefit of all of the evidence described in the Motion, the Respondent requests an evidentiary hearing on the Motion.

RESPECTFULLY SUBMITTED,

Olekanma A. Ekekwe, Esquire
717 D Street, NW
Suite 314
Washington, DC 20004
202-783-1750
D.C. bar #: 479967

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the third day of April, 2006, the original of this Request for Evidentiary Hearing on Motion to Vacate Disciplinary Orders was mailed to Jessica McAllum, Clerk's Office, Board of Immigration Appeals, PO Box 8530, Falls Church, VA 22041; and that a copy was mailed to: Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS, 70 Kimball Avenue, Room 103, S. Burlington, VT 05403; and to Jennifer Barnes, Esquire, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041.

Olekanma A. Ekekwe

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

Case no.: D 2003-016

In the Matter of                     )
                                     )
                                     )
ANTHONY ELADIO RAMOS                 )
                                     )
        Respondent                   )
                                     )
_____     )

**ORDER GRANTING RESPONDENT, ANTHONY E. RAMOS,' MOTION TO VACATE DISCIPLINARY ORDERS**

THIS CAUSE having come on to be heard before this tribunal on Respondent, Anthony E. Ramos,, Motion to Vacate Disciplinary Orders, and this tribunal having heard argument of counsel, and being otherwise duly advised in the premises, it is:

CONSIDERED and ORDERED that, all disciplinary orders previously entered in this cause against the Respondent be and the same are hereby vacated, with prejudice.

DONE and ORDERED, in Chambers, this _____ day of _____, 2006.


_____
                Tribunal Judge

conformed copies to:

Olekanma A. Ekekwe, Esquire, counsel for Respondent

Rachel A. McCarthy, Esquire, Associate Ethics Officer, USCIS

Jennifer Barnes, Bar Counsel, EOIR

App. 0027



U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

*Office of the Clerk*
*5107 Leesburg Pike, Suite 2000*
*Falls Church, VA 22041*

Anthony E. Ramos, Esquire                    Rachel McCarthy, Esquire
1805 Key Boulevard, Apt. 513                 Ethics Counsel
Arlington, VA 22201                          Department of Homeland Security
                                             70 Kimball Avenue, Room 103
                                             South Burlington, VT 05403

Name: Anthony E. Ramos          D2003-016
                                Date of this notice:   March 20, 2006

## – Notice of Rejection –

The Board of Immigration Appeals hereby gives you notice that your request for
evidentiary hearing on motion to vacate disciplinary orders, submitted on
February 3, 2006, is rejected for the following reason(s):

✓  Your submission does not include a fee of $110.00.

✓  Your submission does not include a FORM EOIR-27, Notice of Entry of
   Appearance as Attorney. (Form enclosed)

**PLEASE NOTE:**

- If you wish to be represented by counsel, a Notice of Appearance as Attorney or Representative before the Board
  of Immigration Appeals (Form EOIR-27) must be filed with the Board. Unless a Form EOIR-27 is received from
  your representative, all future notices will be sent directly to you at your address above and not your
  representative.

- Proof of service on all parties is required for ALL submissions to the Board of Immigration Appeals. Any
  submission filed with the Board without a certificate of service on the Office of General Counsel and the
  Department of Homeland Security will be rejected.

CC:  Jennifer Barnes, Esquire              CC:  Olekanma A. Ekekwe, Esquire
     Bar Counsel                                717 D Street, NW, Suite 314
     Executive Office for Immigration Review     Washington, DC 20004
     5107 Leesburg Pike, Suite 2600
     Falls Church, VA 22041

App. 0028

Rachel A. McCarthy
Ethics Counsel
U.S. Citizenship and Immigration Services
70 Kimball Avenue, Room 103
S. Burlington, VT 05403



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**

In the Matter of )
)
**ANTHONY ELADIO RAMOS** )
)      **Disciplinary Case #D 2003-016**
**Respondent** )
)
In disciplinary proceedings )
)

## USCIS RESPONSE TO RESPONDENT, ANTHONY E. RAMOS,'
## MOTION TO VACATE DISCIPLINARY ORDERS
## AND
## REQUEST FOR EVIDENTIARY HEARING

Anthony Eladio Ramos
D2003-016

U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security

(DHS), through its undersigned counsel, respectfully submits its Response to

Respondent's Motion to Vacate Disciplinary Orders and Request for Evidentiary

Hearing, and states:

1.   On November 15, 2005, the Board of Immigration Appeals (BIA) published its

     previously issued final decision in this case.

2.   On December 1, 2005, Respondent filed a "Motion for Rehearing", construed by

     the BIA as a motion to reconsider.

3.   On February 2, 2005, the BIA issued an order denying Respondent's motion,

     finding, *inter alia*, that:

> [t]he respondent also makes accusations that the government presented
> counterfeit documents to supports (sic) its "fictitious" case. . . We rejected
> these claims in our decision on appeal, and there is no reason to revisit the
> issues.

4.   On January 31, 2006, Respondent, through counsel, submitted a Motion to Vacate

     Disciplinary Orders and a Request for Evidentiary Hearing on the Motion.

5.   For purposes of this submission, USCIS has construed the latest filing as a Motion

     to Reopen, although the motion does not conform to the requirements set forth in

     the BIA Practice Manual (See, BIA Practice Manual, Chapter 5.2 (b) in that:

     a.   the motion is not accurately characterized or labeled;
     b.   the motion was not filed with the required fee; and
     c.   the motion is not supported by affidavits or other evidentiary material that
          is material.

App. 0030

6.   Respondent mischaracterizes not only the actions of Counsel for EOIR and

USCIS in these proceedings, but the independence of these agencies and the

databases utilized by them.

7.   Respondent Ramos, and his counsel, in this latest filing commit the very acts of

misconduct that he alleges that USCIS counsel, and now Bar Counsel for EOIR,

committed in these proceedings – by filing this motion replete with unsupported,

false allegations, that have been rejected by the BIA on multiple occasions.

USCIS respectfully requests that the Board deny Respondent, Anthony E. Ramos'

Motion to Vacate Disciplinary Orders, without a hearing.

Respectfully submitted,

DATED: Feb. 7, 2006

DEA CARPENTER
ACTING CHIEF COUNSEL

RACHEL A. McCARTHY
Ethics Counsel
U.S. Citizenship and Immigration Services
70 Kimball Avenue, Room 103
S. Burlington, VT 05403
802) 660-5043, ext. 5437
(802) 660-5067 (FAX)

Anthony Eladio Ramos
D2003-016

## PROOF OF SERVICE

On February 7, 2006, I, Rachel A. McCarthy, mailed a copy of the USCIS RESPONSE TO RESPONDENT, ANTHONY E. RAMOS,' MOTION TO VACATE DISCIPLINARY ORDERS AND REQUEST FOR EVIDENTIARY HEARING to Olekanma A. Ekekwe, Esq., 717 D. Street NW, Suite 314, Washington, DC 20004; Jennifer Barnes, EOIR Bar Counsel, at the following address: Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2600, Falls Church, VA 22041; and to George Martin, Acting Chief Appellate Counsel, Department of Homeland Security, 5113 Leesburg Pike, Suite 200, Falls Church, VA 22041 by first class mail, postage prepaid.

Rachel A. McCarthy, Esq.
Ethics Counsel

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   D2003-016

Date:   FEB - 2 2006

In re:   ANTHONY E. RAMOS, ATTORNEY

IN PRACTITIONER DISCIPLINARY PROCEEDINGS

MOTION

ON BEHALF OF DHS:   Rachel A. McCarthy
                    Associate Ethics Officer

ON BEHALF OF GENERAL COUNSEL:   Jennifer J. Barnes, Bar Counsel

ON BEHALF OF RESPONDENT: Pro se

ORDER:

PER CURIAM.   The respondent, Anthony E. Ramos, filed a "Motion For Rehearing" on December 1, 2005. The motion will be construed as one seeking to have the Board reconsider its final order in this case. The motion, which is opposed by the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service), who instituted this case, will be denied.

On July 25, 2005, we reached a final decision in this case which was published, as amended, on November 15, 2005. *See Matter of Ramos*, 23 I&N Dec. 843, 843-848 (BIA 2005). We affirmed a March 17, 2005, decision of an Immigration Judge, acting as the adjudicating official in this case, ordering the respondent expelled from practice before the Immigration Courts, Board of Immigration Appeals, and DHS. This result stemmed from the fact that on December 18, 1997, the respondent was disbarred by the Supreme Court of Florida.

We initially note, as does the DHS, that the respondent's position in the motion is in direct contradiction to his previous position in this case. On July 28, 2005, the DHS attorney sent a letter to the Board seeking to have its decision published. A copy of the letter was sent to Ramos. He responded by sending his own letter to the Board on August 2, 2005, in which he stated that he had "no objection to publication of this case of first impression" and further noted that he "will not pursue the matter further". The respondent had the opportunity to file a motion to reconsider after we issued our July 25, 2005, decision, but did not do so.

In any event, the pending motion is without merit.

The respondent first complains about the Board's amendment of its July 25, 2005, order (Respondent's Mot., at ¶¶ 2-3). He takes issue with footnote 1 of the Board's published decision, which states that "[o]n our own motion, we amend the July 25, 2005, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent." *Matter of Ramos, supra*, at 843 fn1. The respondent claims that he was not able to respond to the

D2003-016

motion (Respondent's Mot., at ¶¶ 2-3). In fact, the footnote is one often used when the Board publishes previously-unpublished decisions, and it is clear that it refers to non-substantive changes. Indeed, the respondent fails to indicate how the "editorial changes" made by the Board when it published the decision changed the reasoning or result of the unpublished decision. The respondent fails to show how the Board's editorial changes affected him or denied him the right to participate prior to the Board's decision in this case.

The respondent next argues that the Board's decision was made "to impugn the professional reputation of the [respondent], without due process" (Respondent's Mot., at ¶ 4). In fact, the respondent's claims and arguments were fully considered by the Immigration Judge, and this Board, prior to the respondent being expelled from practice. The respondent's assertion that he was denied due process is without substance.

The respondent then argues that the Board's decision should be reconsidered because, he claims, he has reimbursed all clients whose funds he had misappropriated (Respondent's Mot., at ¶ 5). As the DHS argues, this does not change the fact that the respondent was disbarred by the Supreme Court of Florida, based on numerous disciplinary violations, on December 18, 1997, and may not seek reinstatement until 2017.

The respondent asserts that the Immigration Judge "sought to prevent this matter from proceeding to [a] hearing" (Respondent's Mot., at ¶ 6). The respondent also makes accusations that the government presented counterfeit documents to supports its "fictitious" case (Respondent's Mot., at ¶ 7). We rejected these claims in our decision on appeal, and there is no reason to revisit the issues. *Matter of Ramos, supra*, at 847-48. The respondent's motion is, therefore, denied.

_____
FOR THE BOARD

– 2 –

App. 0034



**U.S. Department of Justice**
Executive Office for Immigration Review
Board of Immigration Appeals

*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Anthony E. Ramos, Esquire
1805 Key Boulevard, Apt. 513
Arlington, VA 22201

Rachel A. McCarthy, Esquire
Ethics Counsel
Department of Homeland Security
70 Kimball Avenue, Room 103
South Burlington, VT 05403

Name: Anthony E. Ramos

D2003-016
Date of this notice:    February 2, 2006

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Frank Krider
Chief Clerk of the Board

Enclosure

Panel Members:
  Gerald S. Hurwitz
  David B. Holmes
  Juan P. Osuna

CC:    David A. Landau, Esquire
       Chief Appellate Counsel/DHS

CC:    Jennifer Barnes, Esquire
       Bar Counsel/OGC

App. 0035

**ANTHONY E. RAMOS**
1805 Key Blvd.
Apt. 513
Arlington, VA 22201
202-321-7969

August 2, 2005

Lori L. Scialabba, Chair
Board of Immigration Appeals
Executive Office for Immigration Review
5107 Leesburg Pike
Suite 2400
Falls Church, VA 22041

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2005 AUG -3 P 1:55

RECEIVED OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

       Re: Letter of Rachel A. McCarthy
       *In the Matter of Anthony E. Ramos*
       Case no.: D2003-016

Dear Ms. Scialabba:

I am in receipt of Ms. McCarthy's letter to you, of July 28, 2005, relative to the above-captioned. I have no objection to publication of this case of first impression, especially as it regards me. As my brief makes clear, I am not in immigration. In 2003, I moved to Washington, D.C., because my bar application, as everyone knows, was pending. I predicted, correctly, that the application process would be all time consuming and rigorous, which it has been.

To that end, and as the only G-28s which Ms. McCarthy was able to show, indicate, I used a G-28 as a change of address form. I filled in the box 'Other,' and of course, never held myself out as an attorney or anything other than an agent for some old Florida cases on which I had filled out forms as a paralegal. The sole allegation of 'practicing' was using a G-28 form.

As Ms. McCarthy's letter indicates, the Regulations under which she was traveling were not in effect until the year 2000, so that it would have been impossible for me to be in violation of the Regulations at the time I was disbarred in 1997. In addition, the case is important, because, prior to it, there was absolutely no guidance as to how to read or interpret the Regulations. I am concerned with the harsh language, much of which has now been disproved, as contained in the opinion, concerning the disbarment. In addition, I am quite concerned that a hearing was not permitted to go forward, but again, since I am not in immigration, the opinion truly has no impact on anything I do, and I will not pursue that matter any further.

Finally, the Committee on Admissions for the District of Columbia Bar has recently made some documents from the case a part of the record in my application file. I am not sure of the reason for this, since, by coincidence, and at almost the same time as there was a favorable appellate ruling in my case, the District Court of Appeals made a ruling which makes irrelevant any immigration sanction for purposes of attorney discipline, reciprocal discipline or continuing admissibility. This is the case of attorney, Soinenen, which is well documented in your records and press releases as well. I do have a concern, however, with whether my case, especially given the ruling in the Soinenen case, was somehow, intentionally intervened with so as to attempt to cause problems for my application, without any notice to me. In that regard, I have asked Ms. McCarthy for copies of correspondence between her and the Committee on Admissions. I also have a FOIA request pending on the file. Given that my involvement was never an issue, except for using a G-28 as a change of address form, I am hoping that you may assist in making sure that I receive the requested documents. A press release was also made a part of my admissions file, although I was never provided with a copy of the release, and never provided with a listing of media outlets where the release may have been sent. I believe I have a First Amendment right to those documents and information, as to any past or future press releases, and would appreciate production of those documents as well.

In the application process, the burden is on me to prove that I should be admitted. If much of the contact with the Committee was done in secret, there is the possibility that I could be sandbagged on this issue, and this could affect the outcome of my application.

Thank you for your anticipated courtesies.

Very respectfully,

Anthony E. Ramos

cc: Rachel A. McCarthy, Esquire

Jacqueline M. Smith, Director of Admissions
Committee on Admissions
District of Columbia Court of Appeals

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

2005 AUG -3 P 1:55

BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK





Lori L. Scialabba, Chair
Board of Immigration Appeals
Executive Office for Immigration Review
5107 Leesburg Pike
Suite 2400
Falls Church, VA 22041

22041+3260

Anthony E. Ramos
1805 Key Blvd.
Apt. 513
Arlington, VA 22201

Office    e Chief Counsel

U.S. Department of Homeland Security
70 Kimball Avenue, Room 103
S. Burlington, Vermont 05403



U.S. Citizenship and
Immigration Services

292

July 28, 2005

Lori L. Scialabba
Chairman
Board of Immigration Appeals
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2400
Falls Church, VA   22041

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
2005 AUG - 1    A 10: 08
BOARD OF
IMMIGRATION APPEALS
OFFICE OF THE CLERK

RE:  In the Matter of Anthony Eladio Ramos, Disciplinary Case # D2003-016

Dear Ms. Scialabba:

        Please accept this letter as a request from the Office of Chief Counsel, U.S. Citizenship and
Immigration Services, Department of Homeland Security (USCIS) to publish the appellate decision of the
Board of Immigration Appeals in the above-noted matter.  The July 26, 2005 decision of the Board expelled
Mr. Ramos from practice before the Immigration Courts, the Board, and the Department of Homeland
Security.

        There has been only one decision in an attorney discipline case published as a precedent decision by
the Board since the revision of the Rules of Professional Conduct in 2000.  Although many practitioners have
been disciplined under the roles, in matters initiated by Bar Counsel for the Executive Office for Immigration
Review, guidance from the Board in published decisions would assist immigration practitioners in
understanding the implications of the Rules.  In the Ramos decision, the Board has issued guidance on several
key issues impacting attorney discipline proceedings:  jurisdiction, summary proceedings based upon
reciprocal discipline; and the imposition of discipline.  In addition, publishing the decision in this case would
serve as notice to practitioners of the consequences that result from misconduct.

        Thank you for your consideration of this request.

        Sincerely,

Rachel A. McCarthy
Associate Ethics Officer

(802) 660-5043, ext. 5437
(802) 660-5067 (FAX)

cc:  Jennifer Barnes, EOIR Bar Counsel
     Anthony Ramos

App. 0040

**Publish**

Cite as 23 I&N Dec. 843 (BIA 2005)                Interim Decision # 3521

## In re Anthony E. RAMOS, Attorney

### File D2003-016

### *Decided as amended November 15, 2005*[1]

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) Under the attorney discipline regulations, a disbarment order issued against a practitioner by the highest court of a State creates a rebuttable presumption that disciplinary sanctions should follow, which can only be rebutted upon a showing that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity of proof establishing the misconduct, or that discipline would result in injustice.

(2) A practitioner who has been expelled may petition the Board of Immigration Appeals for reinstatement after 1 year, but such reinstatement is not automatic and the practitioner must qualify as an attorney or representative under the regulations.

(3) The Government is not required to show that an attorney has "appeared" before it, because any attorney is a "practitioner" and is therefore subject to sanctions under the attorney discipline regulations following disbarment.

(4) Where the respondent was disbarred by the Supreme Court of Florida as a result of his extensive unethical conduct, expulsion from practice before the Board, the Immigration Courts, and the Department of Homeland Security is an appropriate sanction.

ON BEHALF OF RESPONDENT: Pro se

FOR EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, OFFICE OF GENERAL COUNSEL: Jennifer J. Barnes, Esquire, Falls Church, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Rachel A. McCarthy, Associate Ethics Officer

BEFORE: Board Panel: OSUNA, Acting Vice Chairman; HOLMES and HURWITZ, Board Members.

---

[1] On our own motion, we amend the July 25, 2005, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent.

Cite as 23 I&N Dec. 843 (BIA 2005)                    Interim Decision # 3521

OSUNA, Acting Vice Chairman:

On March 17, 2005, an Immigration Judge, acting as the adjudicating official in this case, ordered the respondent expelled from practice before the Immigration Courts, the Board of Immigration Appeals, and the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service). The respondent has filed an appeal with the Board. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent was disbarred from the practice of law by the Supreme Court of Florida on December 18, 1997, based on the court's approval of the November 12, 1997, report of a referee. The referee noted that the respondent was given numerous opportunities to respond to the Florida Bar's complaint but chose not to do so. According to the referee, the respondent also failed to appear at a hearing concerning the proper sanction in the case.

After reviewing the respondent's numerous disciplinary violations, the referee concluded that "reduced to its bare essence, this is a theft case. For a period of six (6) years, respondent did not have sufficient funds in his trust account to cover all client liabilities. At its zenith, there was a total trust account shortage of $396,765.02." In addition to the misappropriation of client funds, the respondent forged his clients' signatures on settlement drafts. In that regard the referee stated, "As with misuse of client funds, the Supreme Court of Florida takes a very dim view of forgery."

The referee also found that the respondent had failed to obey a court order and deliberately lied to a tribunal. Furthermore, the referee noted that the respondent "has engaged in a myriad of other unethical conduct . . . which would warrant disbarment several times over." Such unethical conduct included misrepresentation to successor counsel, collecting excessive fees, and representing a client without authority, among many other things. According to the referee, the "respondent has brought into play almost every aggravating factor in The Florida Standards." The referee therefore found it appropriate to recommend that the respondent receive "enhanced disbarment," meaning that he cannot apply for reinstatement in Florida for 20 years.

Consequently, on October 21, 2004, the DHS initiated disciplinary proceedings against the respondent with the issuance of a Notice of Intent to Discipline and petitioned for the respondent's immediate suspension from practice before the DHS on October 25, 2004. *See* 8 C.F.R. § 1292.3 (2004). On November 4, 2004, the Office of General Counsel for the Executive Office

844

for Immigration Review ("EOIR") asked that the respondent be similarly suspended from practice before the EOIR, including the Board and the Immigration Courts. On December 6, 2004, we granted the Government's petition for immediate suspension.

As the respondent requested a hearing on the charges in the Notice of Intent to Discipline, the record was forwarded to the Office of the Chief Immigration Judge under 8 C.F.R. § 1003.106 (2005), which states that in attorney discipline cases, that office shall appoint an adjudicating official (an Immigration Judge) when an answer is filed. *See* 8 C.F.R. § 1292.3(f) (2005); *see also Matter of Gadda*, 23 I&N Dec. 645, 647 (BIA 2003), *aff'd, Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004).

On March 17, 2005, the Immigration Judge expelled the respondent from practice before the Immigration Courts, the Board, and the DHS. The Immigration Judge determined that an evidentiary hearing was not necessary, as the respondent contested only jurisdiction, which had been established. The Immigration Judge issued another order on March 29, 2005, in which he declined to reconsider his final order. The respondent filed a timely appeal with the Board on April 14, 2005, and subsequently the parties submitted briefs. *See* 8 C.F.R. § 1003.106(c) (providing that the Board has jurisdiction to review the decision of the adjudicating official and conducts a de novo review of the record); 8 C.F.R. § 1292.3(f); *see also Matter of Gadda, supra*, at 647.

## II. ANALYSIS

As alleged by the DHS in its Notice of Intent to Discipline, the respondent has been disbarred in the State of Florida. We therefore find that there are grounds for discipline. 8 C.F.R. §§ 1003.102(e)(1), 1292.3(b) (2005).

The regulations provide for summary disciplinary proceedings against a practitioner who, like the respondent, has been disbarred by the highest court of a State. 8 C.F.R. § 1292.3(c). Where the DHS brings proceedings based on a final order of disbarment, such an order creates a rebuttable presumption that disciplinary sanctions should follow. 8 C.F.R. § 1292.3(c)(3)(ii). Such a presumption can only be rebutted upon a showing that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity of proof establishing the misconduct, or that discipline would result in injustice. *Id.; see also Matter of Gadda, supra*, at 648.

The DHS correctly notes in its brief that the respondent set forth seven issues for review in his Notice of Appeal, which were restructured into several issues in the respondent's brief. We also note that the respondent filed a "Reply Brief" on June 10, 2005. We agree with the DHS that the issues raised by the respondent lack merit.

First, the respondent argues that the disciplinary proceedings are unwarranted, because he was disbarred in 1997 and he could have been reinstated by 1998 had the DHS initiated these proceedings in 1997. The respondent refers to 8 C.F.R. § 1003.107 (2005), which allows for reinstatement to practice before the Board, the Immigration Courts, and the DHS. *See also* 8 C.F.R. § 1292.3(f). A practitioner who has been expelled may petition the Board for reinstatement after 1 year. *See* 8 C.F.R. § 1003.107(b).

As the DHS points out, however, reinstatement is not automatic, simply upon the passage of time. Even had the respondent been expelled from practice before the Board, the Immigration Courts, and the DHS at an earlier date, he would not be eligible for reinstatement because he could not qualify as an attorney under 8 C.F.R. § 1001.1(f) (2005), or as a representative under 8 C.F.R. § 1001.1(j). *See* 8 C.F.R. § 1003.107(b). As a result of the respondent's egregious violations of the Florida Rules, he cannot be reinstated to practice law in Florida for 20 years, and he makes no claim that he has been readmitted to practice law in that State. Moreover, he does not meet the definition of a "representative" under 8 C.F.R. § 1001.1(j), as he is not an accredited representative under 8 C.F.R. § 1292.1(a)(4) (2005) and does not otherwise show that he is "entitled to represent others."

The respondent also argues that the penalty imposed on him by the Immigration Judge, i.e., expulsion, was unfair, because other attorneys have not faced such a severe sanction. The regulations provide that expulsion is one sanction that may be applied against an attorney. *See* 8 C.F.R. § 1003.101(a)(1) (2005). We agree with the Immigration Judge that expulsion is an appropriate sanction in this case. As noted above, the Supreme Court of Florida accepted a referee's report, which found that the respondent had misused client funds, forged client signatures, charged excessive fees, and lied to a tribunal. As a result, the respondent received "enhanced disbarment," which precludes reinstatement to the Florida Bar for 20 years. Given the Supreme Court of Florida's endorsement of the referee's report finding extensive unethical conduct committed by the respondent, it is more than appropriate that the respondent be expelled from practice before the Board, the Immigration Courts, and the DHS. *See Matter of Gadda, supra,* at 649 (finding expulsion from practice appropriate where the respondent had engaged in "egregious and repeated acts of professional misconduct" that resulted in expulsion by the Supreme Court of California).

The respondent also contends that disciplinary sanctions may not be imposed against him because he is no longer an attorney as a result of his disbarment. The DHS counters that the respondent "seeks to render a nullity one of the most commonly charged grounds upon which disciplinary sanctions are imposed by adjudicating officials and the Board." The regulations provide that disciplinary sanctions may be applied against an attorney who has been disbarred.

8 C.F.R. §§ 1003.102(e)(1), 1292.3(b); *see also Matter of Gadda, supra,* at 649. Clearly, therefore, the respondent is subject to expulsion as a disbarred attorney.

To the extent that the respondent claims that he is not subject to sanctions because he did not "practice" before the DHS, his argument fails, as we earlier found in issuing an immediate suspension order on December 6, 2004. The regulations make clear that any "practitioner" is subject to sanctions under the attorney discipline regulation, and that any practitioner who has been disbarred by the highest court in a State can be immediately suspended from practice. *See* 8 C.F.R. §§ 1292.3(a)(2), (c). A "practitioner" includes any attorney, as defined at 8 C.F.R. § 1001.1(f). *See* 8 C.F.R. § 1292.3(a)(2). Therefore, because the respondent is an attorney, he is subject to sanctions as a "practitioner," and the Government is not required to show that he has "appeared" before it.

In any event, as we stated in our December 6, 2004, order, the DHS showed that the respondent is the executive director of "All American Immigration Association" and had submitted numerous G-28 forms (Notice of Entry of Appearance as Attorney or Representative), in which he claimed to be an "agent" for the party appearing before the DHS. Given this, the respondent clearly "practiced" before the DHS. *See* 8 C.F.R. § 1001.1(i) (defining "practice" as the "act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the [DHS], or any officer of the [DHS], or the Board").

The respondent asserts that the Immigration Judge did not give him sufficient time to prepare his case. He also makes accusations that the Government defrauded the Immigration Judge and Board. His arguments are without merit, and his accusations are unfounded. On January 11, 2005, the Immigration Judge issued an order directing the parties to present a "statement of issues to be decided at hearing, a detailed description of any evidence that they intend to present (including names of any witnesses and copies of any documents), and a statement clearly establishing the relevance of each item of evidence to an issue to be decided at hearing." The DHS presented evidence that the respondent has been disbarred, as well as evidence that the respondent had practiced before the DHS after being disbarred, including appearance forms and other documents filed by the respondent with the DHS. The respondent fails to show that he was denied adequate time to respond to the documents filed by the DHS, which clearly show that he "practiced" before the DHS.

Additionally, to the extent that the respondent attempts to rebut the presumption of professional misconduct established by his disbarment in Florida, we note that the presumption can be rebutted only by demonstrating by clear, unequivocal, and convincing evidence that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity

of proof establishing the misconduct, or that discipline would result in injustice. *See* 8 C.F.R. § 1292.3(c)(3)(ii); *see also Matter of Gadda, supra*, at 648. As we found in our December 6, 2004, immediate suspension order, the respondent was given notice of the Florida proceedings, but he chose not to answer the Bar's complaint, and he later elected not to appear at a hearing concerning the sanction. The referee's report clearly detailed the respondent's misconduct leading to his disbarment. The respondent made no showing that the proceedings in Florida were unfair, or that he required additional time to dispute the presumption that disciplinary sanctions based on his disbarment should follow.

Finally, the respondent argues that the Immigration Judge erred by issuing his decision without a hearing. The Immigration Judge correctly decided that the respondent's prehearing statement failed to establish that a hearing was necessary. There are no issues of material fact that would require a hearing in this case. As noted, a final order of disbarment creates a rebuttable presumption of professional misconduct, which results in disciplinary sanctions unless the presumption is rebutted. 8 C.F.R. § 1292.3(c)(3)(ii). The respondent offered nothing to suggest that the Florida proceedings were unfair and has identified no issues that would require an evidentiary hearing. *See Matter of Gadda, supra*, at 648.

## III. CONCLUSION

In sum, with agree with the DHS that clear, unequivocal, and convincing evidence establishes that it is in the public interest to discipline the respondent, based on the final order of disbarment issued by the Supreme Court of Florida on December 18, 1997. We further conclude that expulsion is the appropriate sanction.

**ORDER:** The respondent's appeal is dismissed, and he is expelled from practice before the Board, the Immigration Courts, and the DHS.

848

 

United States Department of Justice
Executive Office for Immigration Review
Immigration Court
Falls Church, Virginia

In the Matter of: )
)
ANTHONY ELADIO RAMOS )          IN DISCIPLINARY PROCEEDINGS
)          File No. D 2003-016
Respondent )
)

ON BEHALF OF THE RESPONDENT:          ON BEHALF OF THE DEPARTMENT OF
HOMELAND SECURITY:
Anthony Eladio Ramos, *pro se*          Rachel A. McCarthy
Associate Ethics Officer
U.S. Citizenship and Immigration Services

ON BEHALF OF THE EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW:

Jennifer J. Barnes
Bar Counsel

## ORDER

This request for reciprocal suspension was brought by the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) pursuant to the Respondent's disbarment by the Supreme Court of Florida. DHS and EOIR sought and obtained from the Board of Immigration Appeals (BIA) an immediate suspension of the Respondent pending a decision on the charges in this complaint.

The Respondent argues here, and argued in response to the motion for immediate suspension, that this forum lacks jurisdiction to discipline him because he has never been admitted to practice as an attorney before the DHS or the Immigration Courts. That argument was rejected by the BIA in its December 6, 2004, decision on the immediate suspension. For the same reasons given in that decision, the Respondent's arguments regarding jurisdiction are denied here with respect to the issue of a reciprocal suspension. The Respondent clearly filed a number of "Notice of Entry of Appearance as Attorney or Representative" forms with the DHS in immigration proceedings, listing himself as "agent for petitioner and beneficiary." This constituted practice in the administrative immigration forum and subjected the Respondent to sanctions. Furthermore, his argument that he was appearing in some capacity other than as attorney is not well-founded. First, the Respondent did not qualify as any other kind of authorized practitioner. Second, the regulations permit the discipline of any practitioner - attorney or non-attorney.

App. 0047

 

The Respondent has requested a hearing on the matter of his reciprocal suspension as permitted under 8 C.F.R. § 1003.106(a). Pursuant to that request, the parties were ordered to submit a pre-hearing statement of issues to be decided at hearing, a detailed description of any evidence that they intended to present and a statement clearly establishing the relevance of each item of evidence to an issue to be decided at hearing. The Respondent indicated that he intended to present records of the government's bar admission and application rolls, testimony of records custodian for the government's bar admissions, testimony of the government's corporate representative and counsel, and testimony of the Respondent. This evidence would only relate to the issue of jurisdiction and the Respondent's status as an attorney. Inasmuch as jurisdiction is established by the evidence already in the record, I find that an evidentiary hearing to establish jurisdiction is not necessary.

The sanction requested by the DHS and EOIR in this case is expulsion. Although under a pre-hearing order the Respondent was given an opportunity to identify all evidence that he would present at a hearing, the Respondent has confined his argument and proffered evidence relating only to the issue of jurisdiction. The Respondent offered no evidence or argument to suggest that he was not disbarred or that expulsion would be an inappropriate sanction in any other respect. The regulations state that it is in the public interest to impose sanctions against a practitioner who, like the Respondent, is subject to a final order of disbarment or suspension by any state. In fact, expulsion appears to be the only appropriate sanction in a case such as this, where the practitioner is a disbarred attorney who does not qualify to be a representative under any other category.[1] Consequently, I find that grounds for discipline and the appropriateness of the sanction requested by DHS and EOIR are proved by clear, unequivocal and convincing evidence.

For the foregoing reasons, the Respondent is ORDERED expelled from practice before the Immigration Courts, the Board of Immigration Appeals and the Department of Homeland Security.

3/17/2005
Date

Daniel Echavarren
Assistant Chief Immigration Judge

---

[1] The classes of individuals, other than attorneys, who can represent others in immigration proceedings are limited in number. The Respondent makes no claim that he is a law student, an accredited representative, a government official or attorney of a foreign country, a person authorized to practice in the forum prior to 1952, or that he appears as amicus curiae. The Respondent does not meet the definition of a "reputable individual" under the regulations because there is no suggestion that: (1) he appeared only on an individual case, (2) he appeared without remuneration and (3) he had a pre-existing relationship or connection with the persons being represented (e.g., relative, neighbor, clergyman, business associate, personal friend). Further, the Respondent would not have been authorized to appear as a reputable individual because he regularly engaged in immigration and naturalization practice or preparation, and held himself out to the public in a website as qualified to do so.

2

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   D2003-016

Date:   DEC – 6 2004

In re:  ANTHONY E. RAMOS, ATTORNEY

IN PRACTITIONER DISCIPLINARY PROCEEDINGS

PETITION FOR IMMEDIATE SUSPENSION

ON BEHALF OF DHS:   Rachel A. McCarthy, Ethics Counsel

ON BEHALF OF GENERAL COUNSEL:   Jennifer J. Barnes, Bar Counsel

ON BEHALF OF RESPONDENT: Pro se

ORDER:

PER CURIAM.  The respondent was disbarred from the practice of law by the Supreme Court of Florida on December 18, 1997.

Consequently, on October 25, 2004, the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service), initiated disciplinary proceedings against the respondent and petitioned for the respondent's immediate suspension from practice before the DHS. On November 4, 2004, the Office of General Counsel for the Executive Office for Immigration Review (EOIR) asked that the respondent be similarly suspended from practice before EOIR, including the Board and immigration courts.

The respondent argues that he should not be immediately suspended from practice, and that he should be granted "summary judgment" on the charges.  Although he admits that he has been disbarred in Florida, he claims that he has not "appeared before the Department".  He has also improperly filed before the Board requests for admissions, interrogatories, and a request to produce documents.[1]  However, the regulations make clear that any "practitioner" is subject to sanctions under the attorney discipline regulations.  *See* 8 C.F.R. § 1292.3.  A "practitioner" includes any attorney, as defined at 8 C.F.R. § 1001.1(f).  *See id.*  Therefore, the government does not bear the burden of showing that the respondent has "appeared" before it.  Rather, any practitioner who, like the respondent, has been disbarred by the highest court in a state, is subject to immediate suspension. *See* 8 C.F.R. § 1292.3(c).

In any event, we consider that the DHS has presented evidence that the respondent is the executive director of "All American Immigration Association", and has submitted numerous "Notice

---

[1] We grant the DHS' "Motion To Strike Discovery", for as the DHS argues, there is no provision for discovery before the Board in attorney discipline proceedings.

D2003-016

of Entry of Appearance As An Attorney or Representative" (G-28) forms to the DHS[2], in which he claims to be an "agent" for the party appearing before the DHS. Given this, the respondent has clearly "practiced" before the DHS. *See* 8 C.F.R. § 1001.1(i) (defining "practice" as "the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the [DHS], or any officer of the [DHS], or the Board").

Further, the regulations do not provide for a hearing prior to the issuance of the immediate suspension order. Instead, the Board is directed to issue an order "forthwith" upon the government's request, when sufficient evidence is presented concerning a disbarment. *See* 8 C.F.R. § 1292.3(c)(2).[3] The regulations provide that a hearing may be requested, and an adjudicating official appointed, in order to reach a final decision concerning the charges in the Notice of Intent to Discipline. *See* 8 C.F.R. §§ 1003.106; 1292.3.

Therefore, the petition is granted, and the respondent is hereby suspended from the practicing before the Board, the Immigration Courts, and the DHS pending final disposition of this proceeding. *See* 8 C.F.R. § 1292.3(c). We direct that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of the DHS.

The respondent has requested a hearing on the charges in the Notice of Intent to Discipline. Therefore, the record will be returned to the Office of the Chief Immigration Judge under 8 C.F.R. § 1003.106, which states that, in attorney discipline cases, that office shall appoint an adjudicating official (an Immigration Judge) when an answer is filed. *See also* 8 C.F.R. § 1292.3(f).

FOR THE BOARD

---

[2] The DHS provides several examples of the G-28 forms, and states that the respondent has filed 111 such forms.

[3] The respondent argues that an "emergency hearing" is required, because he was disbarred without notice, in absentia. As the DHS argues, and as the Supreme Court of Florida "Report of Referee" (Nov. 12, 1997), pp. 1-4, sets forth, the respondent was indeed given notice of the Florida proceedings, but chose not to answer the Bar's complaint, and later chose not to appear at a hearing concerning the sanction. We have considered the respondent's assertion that he was disbarred because of prejudiced members of the community. Such claims are utterly without basis given the Florida "Report of Referee", which details the respondent's misconduct, which led to his disbarment.

- 2 -

# EXHIBIT TWO

## (INTERNET POSTINGS AND MATERIALS LINKED TO THOSE POSTINGS)



**U.S. Department of Justice**
Executive Office for Immigration Review
*Office of the Director*
*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

# NEWS RELEASE

**Contact:**  Office of Legislative and Public Affairs
(703) 305-0289  Fax: (703) 605-0365
**Internet:**  www.usdoj.gov/eoir/

January 10, 2005

## EOIR Announces Latest Disciplinary Actions Under Rules of Professional Conduct

### *One Attorney Immediately Suspended; Five Receive Final Orders*

FALLS CHURCH, VA – The Executive Office for Immigration Review (EOIR) has taken disciplinary action against six attorneys after charging them with violations of the Rules of Professional Conduct for immigration practitioners. The Rules appear in Title 8 of the Code of Federal Regulations (8 CFR Parts 1003 and 1292). In most cases, the disciplinary action is initiated as a result of sanctions imposed by other jurisdictions or a criminal conviction.

Although the disciplinary process may vary according to the specific circumstances of each case, generally it includes the following steps:

Disciplinary proceedings begin with a Notice of Intent to Discipline filed with the Board of Immigration Appeals (BIA) by the Office of the General Counsel of either EOIR or the Department of Homeland Security (DHS). The BIA requires the attorney to respond to the alleged violations. In some cases, a Petition for Immediate Suspension also is filed and the BIA orders the attorney to be suspended immediately from practice before the Immigration Courts, the BIA, and the DHS. (DHS joins EOIR in taking the disciplinary action.) Disciplined attorneys are directed to notify promptly, in writing, any clients with cases currently pending before the BIA, the Immigration Courts, or the DHS that they may no longer represent clients before these tribunals. Disciplined attorneys must petition and be reinstated by the BIA before they can resume the practice of law before the BIA, the Immigration Courts, and the DHS.

### Immediate Suspension

The BIA ordered the immediate suspension of the following attorney:

- **Anthony E. Ramos:**  He was disbarred from the practice of law by the Supreme Court of Florida. He was immediately suspended by the BIA on December 6, 2004, pending final disposition of his case.

(more)

*Office of Legislative and Public Affairs*

**Attorney Discipline**
**Page 2**

**Final Orders of Discipline**

The BIA issued Final Orders of Discipline against the following attorneys:

- **Jordan N. Baker:** His license to practice law was revoked on October 28, 2003, in Virginia after pleading guilty to immigration-related fraud. He was immediately suspended by the BIA on November 16, 2004, pending final disposition of his case. The final order of December 7, 2004, expels him from practice before the immigration tribunals.

- **Steven Y. Lee:** His license to practice law was revoked on October 28, 2003, in Virginia, and he was disbarred by the District of Columbia Court of Appeals, after pleading guilty to immigration-related fraud. He was immediately suspended by the BIA on November 22, 2004, pending final disposition of his case. The final order of December 7, 2004, expels him from practice before the immigration tribunals.

- **Javier Lopera:** He was disbarred from the practice of law by the Supreme Court of Florida based on a criminal conviction for conspiracy to commit offenses against the United States, making false statements, and harboring aliens. He was immediately suspended by the BIA on November 4, 2004, pending final disposition of his case. The final order of December 7, 2004, expels him from practice before the immigration tribunals.

- **Alfred G. Santos:** He was suspended from the practice of law for 1 year by the District Court of Harris County, Texas, 29th Judicial District, for professional misconduct. He was immediately suspended by the BIA on November 4, 2004, pending final disposition of his case. The final order of December 7, 2004, suspends him from practice before the immigration tribunals for 1 year, effective November 4, 2004.

- **Joseph E. Sheridan:** He was disbarred from the practice of law by the Supreme Court of California for multiple acts of misconduct concerning an immigration client. He was immediately suspended by the BIA on September 9, 2004, pending final disposition of his case. The final order of December 7, 2004, expels him from practice before the immigration tribunals.

**Background**

The Rules of Professional Conduct include provisions specifying grounds for disciplinary action, requirements for receiving and investigating complaints, and procedures for conducting hearings. The Rules also authorize the BIA to immediately suspend a practitioner who has been subject to disbarment, suspension, or resignation with an admission of misconduct as imposed by a state or Federal court, or who has been convicted of a serious crime, pending a summary proceeding and final sanction. They are available on the EOIR Web site at http://www.usdoj.gov/eoir/vll/fedreg/2000_2001/fr27jn00R.pdf.

EOIR announces these disciplinary actions to inform the public about practitioners who are not authorized to represent any matter before an immigration tribunal. EOIR also posts a "List of Suspended and Expelled Practitioners" on its Web site at http://www.usdoj.gov/eoir (near the bottom of EOIR's home page).

(more)

*Office of Legislative and Public Affairs*

**Attorney Discipline**
**Page 3**

Additional information about the Attorney Discipline Program can be found at
http://www.usdoj.gov/eoir/press/00/profcond.htm and http://www.usdoj.gov/eoir/press/00/
profcondfaks.htm on the EOIR Web site.


EOIR is responsible for adjudicating immigration cases.  Specifically, under delegated authority from the Attorney General, EOIR interprets and administers Federal immigration laws by conducting Immigration Court proceedings, appellate reviews, and administrative hearings.  EOIR consists of three components:  the Office of the Chief Immigration Judge, which is responsible for managing the numerous Immigration Courts located throughout the United States where Immigration Judges adjudicate individual cases; the Board of Immigration Appeals, which primarily conducts appellate reviews of Immigration Judge decisions; and the Office of the Chief Administrative Hearing Officer, which adjudicates immigration-related employment cases.  EOIR is committed to providing fair, expeditious, and uniform application of our Nation's immigration laws in all cases.


– EOIR –



**U.S. Department of Justice**

Executive Office for Immigr
Review

*Bar Counsel*

*5107 Leesburg Pike, Suite Office of the General Couns*
*Falls Church, Virginia 22041*

April 30, 2007

# LIST OF DISCIPLINED PRACTITIONERS

\* = denotes practitioner(s) most recently disciplined

For more information about a practitioner's disciplinary history, click on the date highlighted in blue.

For more information about the Executive Office for Immigration Review's Attorney Discipline Program,

click on these links: <u>Rules for Professional Conduct</u> & <u>Professional Conduct for Immigration Practitioners - Factsheet</u>

| NAME | CITY/STATE | DATE IMMED. SUSPENSION IMPOSED | FINAL DISCIPLINE IMPOSED | EFFECTIVE DATE OF DISCIPLINE | REINSTATED? |
|------|-----------|-------------------------------|-------------------------|------------------------------|-------------|
| Richard Acevedo | San Antonio, TX | <u>10/8/02</u> | Suspended - 5 years | <u>10/8/02</u> | No |
| Mohamed Alamgir | District of Columbia | ----------- | Expelled | <u>7/9/04</u> | No |
| Stephen J. Alexander | Los Angeles, CA | <u>9/16/05</u> | Expelled | <u>9/16/05</u> | No |
| Mahmoud Alsafty | Maryland/New York | <u>5/7/04</u> | Suspended - 1 year | <u>3/30/04</u> | Yes - 9/13/06 |
| Rita H. Altman | Florida | <u>10/30/06</u> | Indefinite Suspension | <u>10/30/06</u> | No |

| Grosvenor Anschell | Washington | 11/30/00 | Suspended - 2 years | 11/30/00 | No |
|---|---|---|---|---|---|
| Derrick G. Arjune | New York | 8/11/05 | | | |
| Chris Asher | District of Columbia/ Maryland | 7/30/01 | Suspended - 5 years | 7/30/01 | No |
| Frank A.K. Awuah | District of Columbia/ Maryland | 10/1/01 | Indefinite Suspension | 10/1/01 | No |
| Mikre-Michael Ayele | Virginia | 7/12/06 | Suspended - 1 year and 1 day | 7/12/06 | No |
| Jordan N. Baker | Virginia | 11/16/04 | Expelled | 12/7/04 | No |
| Michael T. Barrett | Oregon | 10/4/01 | Indefinite Suspension | 10/4/01 | No |
| Sharon Bartu | Washington | 6/15/01 | Suspended - 6 months | 6/15/01 | No |
| Mario Antonio Bautista | San Francisco, CA | 12/2/05 | Indefinite Suspension | 12/2/05 | No |
| Mitchil O. Bechet | New York | 12/21/00 | | | |
| Chaim Howard Berglas | New York | 5/11/05 | Suspended - 1 year | 5/11/05 | No |
| Kathleen L. Bilbe | Louisiana | ----------- | Suspended - 5 years | 6/2/98 | No |
| Roy L. Bischoff | Utah/Nevada | 6/27/05 | Expelled | 6/27/05 | No |
| Ann Bitterman | Florida | 3/18/05 | Suspended - 91 days | 3/18/05 | No |
| Ira Sylvester Brackens | San Francisco, CA | 7/24/03 | Suspended - 18 months | 7/24/03 | No |
| David L. Brehmer | Minnesota | 3/8/01 | Indefinite Suspension | 3/8/01 | No |
| Marcia Jean Brinkley | Texas/San Diego, CA | 2/17/05 | Suspended - 5 years | 2/17/05 | No |
| Brenda C. Brisbon | Maryland | 5/12/05 | Indefinite Suspension | 5/12/05 | No |
| David Eric Brockway | Los Angeles, CA | 11/17/06 | | | |
| Deloris A. Brown | District of Columbia | 5/7/01 | Indefinite Suspension | 5/7/01 | No |
| Dennis Detmer Burchard | San Diego, CA | 4/8/03 | Suspended - 9 months | 4/8/03 | No |

| Bruce C. Burge | San Francisco, CA | ------------ | Suspended - 6 months | 10/23/03 | No |
|---|---|---|---|---|---|
| David Keith Burgess | San Francisco, CA | 11/7/02 | | | |
| Martha L. Burns | Minnesota | 12/7/01 | Suspended - 9 months | 12/7/01 | No |
| Walter Burrier | Connecticut/ Los Angeles, CA | 5/13/05 | Suspended - 1 year | 5/13/05 | No |
| Carlos H. Caceres | Maryland | 12/13/06 | | | |
| Nancy Carper | Illinios | 6/21/06 | Suspended - 3 years | 6/21/06 | No |
| Joel H. Cavadel | Pennsylvania | ------------ | Suspended - 9 months | 11/14/05 | No |
| Juan Chacon | Sacramento, CA | 11/20/06 | Suspended - 1 year | 11/20/06 | No |
| Manlin Chee | North Carolina | 3/18/05 | Expelled | 3/18/05 | No |
| Carroll A. Clark | Arizona | ------------ | Suspended - 6 months and 1 day | 11/5/04 | No |
| P. Lee Clay | West Virginia | 9/13/06 | Indefinite Suspension | 9/13/06 | No |
| Marsden Coates | Maryland | 1/24/05 | Expelled | 1/24/05 | No |
| Marshall Lawrence Cohen | Florida/Georgia | 11/8/05 | Suspended - 5 years | 4/25/05 | No |
| Kemakolan Comas | New York | 3/1/05 | | | |
| Richard Paul Condon | Florida | 7/19/06 | Suspended - 5 years | 7/19/06 | No |
| Antonio Cortez | El Paso, TX | 11/4/04 | Suspended - 12 months | 11/4/04 | No |
| Robert A. Cox | Missouri | 10/30/06 | Suspended - 2 years | 10/30/06 | No |
| Baird Cuber | New York | 6/27/05 | Expelled | 6/27/05 | No |
| Paul Howard Curtis | Los Angeles, CA | 7/16/03 | Suspended - 6 months | 7/16/03 | No |
| Lester Walter Czapelski | New Jersey | 2/18/04 | | | |
| Marcia Lynn Czapelski | New Jersey | 2/18/04 | | | |
| Edward Daneri | San Antonio, TX | 4/30/03 | Suspended - 5 years | 4/30/03 | No |

| | | | | | |
|---|---|---|---|---|---|
| Dan P. Danilov | Washington | 9/25/03 | | | No |
| Sergei Danilov | District of Columbia/Maryland | 9/13/06 | Expelled | 9/13/06 | No |
| Reginald Egan Darbonne | Florida | 12/1/00 | Suspended - 5 years | 12/1/00 | No |
| Earl S. David | New York | ------------ | Suspended - 15 months | 7/9/04 | No |
| Charles C. Day | Florida | 11/29/06 | Expelled | 11/29/06 | No |
| Howard D. Deutsch | New York | 5/30/01 | | | |
| Drew S. Diehl | Ohio | 8/12/05 | Suspended - 2 years | 8/12/05 | No |
| James C. Dragon | Massachussetts | 1/30/03 | Indefinite Suspension | 10/29/03 | No |
| Allen Ebert | District of Columbia | 7/12/06 | Suspended - 5 years | 7/12/06 | No |
| Grisel S. Echavarria | Wisconsin | 3/28/05 | Expelled | 3/28/05 | No |
| Irving Edelman | New York | ------------ | Indefinite Suspension | 7/10/96 | No |
| Aloysius O. Ejimakor | Maryland | ------------ | Suspended - 9 months | 1/8/04 | No |
| Allan M. Elster | Florida | 12/1/00 | Suspended - 3 years | 12/1/00 | No |
| Kelechi Charles Emeziem | San Francisco, CA | 12/5/06 | Suspended - 18 months | 12/5/06 | No |
| Ronald Fanta | New York | 12/2/05 | Expelled | 12/2/05 | No |
| Luis Alberto Flores | New York | 6/12/06 | Indefinite Suspension | 6/12/06 | No |
| Irwin Jay Fredman | Maryland/District of Columbia | 1/11/06 | Expelled | 1/11/06 | No |
| Paul Ira Freedman | New York | 9/18/01 | Expelled | 9/18/01 | No |
| Miguel Gadda | San Francisco, CA | 10/2/01 | Expelled | 7/8/03 | No |
| Virginia Gago | New York | 2/2/06 | Expelled | 2/2/06 | No |
| Edward P. Gallagher | Maryland | 3/3/05 | Expelled | 3/3/05 | No |
| Jorge H. Galvez | Utah | 1/30/06 | Indefinite Suspension | 1/30/06 | No |

| Maximiliano S. Garcia | Arizona/California | 10/7/05 | | | |
|---|---|---|---|---|---|
| Ruben John Garcia | San Antonio, TX | 6/15/01 | Suspended - 5 years | 6/15/01 | No |
| William R. Gardner | San Francisco, CA | 3/8/01 | Suspended - 6 months | 10/19/00 | No |
| Richard F. Garza | Dallas, TX | 3/7/06 | Suspended - 5 years | 3/7/06 | No |
| Lowell Gettman | New York/Ohio | ----------- | Public Censure | 8/16/06 | ----------- |
| Alexander Goldman | Illinois | 11/22/05 | Expelled | 11/22/05 | No |
| Wendy B. Golenbock | Massachusetts | 4/17/02 | Suspended - 8 years | 4/17/02 | No |
| *Maria I. Gonzalez | New Jersey/New York | 3/1/07 | Suspended - 3 months | 2/24/07 | No |
| Jeffrey Gonzalez-Perez | Virginia | 8/4/04 | Suspended - 2 years | 8/4/04 | No |
| Justin Edward Gould | Florida | 2/5/07 | Suspended - 90 days | 11/12/06 | Yes - 3/7/07 |
| Nicholas C. Grapsas | Wisconsin | 9/15/00 | Suspended - 6 months | 9/15/00 | No |
| Charles A. Grutman | New York | 6/6/02 | Suspended - 7 years | 6/6/02 | No |
| Rosalynn D. Guillen | Washington | 10/29/01 | Suspended - 5 years | 10/29/01 | No |
| Edward Haase | San Diego, CA | ----------- | Public Censure | 9/5/06 | ----------- |
| Cheryl Handy | Illinois | 1/24/05 | Suspended - 1 year | 1/24/05 | No |
| Hanna Z. Hanna | New York | 4/30/03 | Suspended - 3 years | 4/30/03 | No |
| Alfred L. Hansen | Louisiana/San Francisco, CA | 1/10/05 | Suspended - 2 years | 1/10/05 | No |
| Alan J. Harris | New York | 2/21/06 | Indefinite Suspension | 2/21/06 | No |
| Michael C. Hyde | Florida | 9/9/04 | Suspended - 30 days | 9/9/04 | No |
| Richard Allen James | District of Columbia/ Maryland | 6/15/01 | Suspended - 5 years | 6/15/01 | No |
| Larry Johnson | New York | 5/19/06 | Suspended - 7 years | 5/19/06 | No |
| Walter T. | North Carolina | 3/19/04 | Suspended - 1 | 3/19/04 | No |

| Name | State | Date | Action | Date | |
|------|-------|------|--------|------|---|
| Johnson, Jr. | | | year | | |
| Alake Johnson-Ford | District of Columbia | 9/15/00 | Suspended - 5 years | 9/15/00 | No |
| Margot S. Jones | Pennsylvania | 6/27/06 | Suspended - 2 years | 6/27/06 | No |
| Thomas Christopher Jones | Illinois | 10/6/04 | Suspended - 30 months | 10/06/04 | No |
| Keith Jordan | San Francisco, CA | ---------- | Public Censure | 1/25/07 | ---------- |
| Lijyasu Kandekore | Florida | 11/30/00 | Indefinite Suspension | 6/20/01 | No |
| Randhir S. Kang | San Francisco, CA | 1/27/06 | Indefinite Suspension | 1/27/06 | No |
| Eric J. Kapoor | Maryland | 9/26/06 | | | |
| Deborah J. Kartje | Chicago, IL/Northern IN | 12/4/00 | Expelled | 12/4/00 | No |
| William P. Kaszynski | Minnesota | 3/8/01 | Expelled | 3/8/01 | No |
| *John W. Kearns | Illinois | 4/6/07 | | | |
| Dalia R. Kejbou | Michigan | 2/16/06 | Suspended - 6 weeks | 11/22/06 | Yes - 2/27/07 |
| Morris B. Kemper | San Francisco, CA | 5/7/01 | Suspended - 1 year | 5/7/01 | No |
| Kishan Khanna | Colorado | 5/19/06 | Suspended - 9 months | 5/19/06 | No |
| Claude Henry Kleefield | New York | 12/2/05 | Suspended - 3 months | 12/2/05 | No |
| Alan Edward Koczela | Virginia | 8/10/00 | | | |
| Samuel G. Kooritzky | Virginia | 4/8/03 | Expelled | 4/8/03 | No |
| Robert L. Koven | Maryland | 5/7/01 | Indefinite Suspension | 5/7/01 | No |
| John J. Kozlowski | San Francisco, CA | 10/29/01 | Suspended - 90 days | 10/29/01 | No |
| Dorothea J. Kraeger | Arizona | 6/2/05 | | | |
| Milton Dan Kramer | San Francisco, CA | 8/10/00 | Indefinite Suspension | 3/1/00 | No |
| Boris A. Krivonos | New York | ---------- | Expelled | 1/30/03 | No |

| Robert M. Kuhnreich | New York | 8/11/05 | Expelled | 8/11/05 | No |
|---|---|---|---|---|---|
| Charles P. LeBeau | San Diego, CA | 10/19/06 | Expelled | 10/19/06 | No |
| Benson Lee | Nevada | 3/21/07 | | | |
| Steven Y. Lee | District of Columbia/ Virginia | 11/22/04 | Expelled | 12/7/04 | No |
| Richard G.Lehr | Michigan | 12/19/06 | Suspended - 180 days | 7/22/06 | No |
| Eric Levine | Massachusetts | 10/25/05 | Suspended – 4 years | 10/25/05 | No |
| Michael S. Levine | Pennsylvania/Florida | 7/27/06 | | | |
| Clyde E. Lindsay | Massachusetts | 2/11/04 | Suspended - 1 year | 2/11/04 | Yes - 1/10/07 |
| J. Thomas Logan | Los Angeles, CA | ------------ | Suspended - 60 days | 12/1/04 | No |
| Javier Lopera | Florida | 11/4/04 | Expelled | 12/7/04 | No |
| Mark E. Maier | Maryland | 12/4/00 | Indefinite Suspension | 12/4/00 | No |
| Claro L. Mamaril | Los Angeles, CA | ----------- | Expelled | 3/15/06 | No |
| Denise A. Maniscalco | Virginia | 9/1/04 | Suspended - 32 months and 3 days | 10/19/04 | No |
| Brandon Marinoff | Colorado | 1/31/05 | Suspended - 12 months | 1/31/05 | No |
| Allen C. Marra | New York/ New Jersey | 7/18/05 | Indefinite Suspension | 7/18/05 | No |
| Jason A. Martinez | Arkansas | 9/25/03 | Expelled | 9/25/03 | No |
| Victor Stephen Martinez | Los Angeles, CA | 10/9/02 | Suspended - 9 months | 10/9/02 | No |
| Timothy P. Mason | Los Angeles, CA | 7/20/04 | | | |
| Timothy L. McCandless | Los Angeles, CA | 10/6/04 | Suspended - 6 months | 10/6/04 | No |
| Mackson P. McDowall | New York | 3/8/01 | Suspended - 2 years | 3/8/01 | No |
| Patrick John McGreal | Illinois | 9/26/06 | | | |
| Terrence McGuire | Los Angeles, CA | 9/1/05 | Suspended - 2 years | 9/1/05 | No |

| Armando J. Mendez | San Francisco, CA | 7/24/03 | Suspended - 90 days | 7/24/03 | No |
| John Owen Meyers, III | Los Angeles, CA | 10/29/01 | Suspended - 20 months | 10/29/01 | No |
| Maqsood Mir | Maryland | 9/16/05 | | | |
| Wayne M. Mitchell | Maryland | 12/2/05 | Expelled | 12/2/05 | No |
| Carolyn E. Miyashita | North Carolina/San Francisco, CA | 8/10/00 | Suspended - 5 years | 8/10/00 | No |
| Gaetanella Molinini-Rivera | New York | 12/2/05 | | | |
| Michael G. Moore | Massachusetts | 9/25/03 | Suspended - 2 years | 9/25/03 | No |
| Carlos E. Morales | Florida | 5/19/06 | | | |
| Robert Paul Muenchrath | Minnesota | 9/28/00 | Indefinite Suspension | 9/28/00 | No |
| Joseph Francis Muto | New York | 5/3/02 | Suspended - 7 years | 1/28/03 | No |
| Toritsefe Nanna | New York | 8/4/04 | Indefinite Suspension | 8/4/04 | No |
| Fuad B. Nasrallah | Michigan/Ohio | 1/25/01 | Indefinite Suspension | 1/25/01 | No |
| Paul Ngobeni | Connecticut | 2/24/06 | | | |
| Thomas James O'Grady | Florida | 4/17/02 | Suspended - 5 years | 4/17/02 | No |
| Michael Imevbore Ojo | Houston, TX | 12/2/05 | Suspended - 12 months | 12/2/05 | No |
| Dennis F. Olsen | Washington | 2/21/06 | | | |
| Justin Jin-Lin Ong | Houston, TX | 1/25/01 | Expelled | 1/25/01 | No |
| Oleg Ordinartsev | Washington | 6/27/05 | Suspended - 2 years | 6/27/05 | No |
| Douglas D. Osterloh | Washington | 11/24/04 | Suspended - 5 years | 11/24/04 | No |
| Sheri B. Paige | Connecticut | 11/4/04 | Expelled | 11/4/04 | No |
| Maria Lara Peet | Florida | 2/16/06 | | | |
| Alfred Perez, Jr. | Los Angeles, CA | 7/20/04 | Expelled | 7/20/04 | No |

| | | | | | |
|---|---|---|---|---|---|
| Linda Irene Perez | San Antonio, TX | 3/28/05 | Suspended - 2 years | 3/28/05 | No |
| Horace Hugo Perez | District of Columbia/Virginia | 9/15/03 | Suspended - 60 days | 9/15/03 | No |
| James S. Phillips, Jr. | Kansas | 10/22/04 | | | |
| Ramon R. Pizzini-Arnott | Florida/Puerto Rico | 7/24/03 | Suspended - 6 months | 7/24/03 | No |
| John S. Pomeroy | Massachusetts | 7/15/05 | | | |
| Robert E. Porges | New York | 5/6/02 | Expelled | 5/6/02 | No |
| Jorge Portugal | San Francisco, CA | 2/5/07 | | | |
| John E. Price | Missouri/Kansas | 6/1/06 | Suspended - 5 years | 6/1/06 | No |
| *Jon E. Purizhansky | New York | 4/6/07 | | | |
| Jose M. Quinones | Los Angeles, CA | ---------- | Suspended - 90 days | 9/16/05 | No |
| Johnny P. Ragasa | Hawaii | 7/10/02 | Suspended - 5 years | 7/10/02 | No |
| Anthony E. Ramos | District of Columbia/Florida | 12/6/04 | Expelled | 7/25/05 | No |
| Jose Louis Ramos | Los Angeles, CA | 7/31/01 | Suspended - 42 months | 7/31/01 | No |
| Kenneth R. Rastello | Michigan | 8/10/00 | Suspended - 180 days | 8/10/00 | No |
| Maritza Regalado | Florida | 2/7/05 | Suspended - 5 years | 2/7/05 | No |
| James Carlisle Regan | Los Angeles, CA | 1/30/06 | Suspended - 5 years | 1/30/06 | No |
| Rico C. Reyes | Florida | 12/2/05 | Indefinite Suspension | 12/2/05 | Yes - 10/19/06 |
| Frank William Ricci | Florida/Indiana | 9/28/00 | Expelled | 9/28/00 | No |
| Wayne Anthony Rodney | Pennsylvania | 10/7/02 | Suspended - 1 year and 1 day | 10/07/02 | No |
| Harley Rosenthal | Florida | 10/30/06 | Suspended - 5 years | 10/30/06 | No |
| Kenneth L. Rothey | Houston, TX | 4/11/06 | | | |
| Leon | San Francisco, CA | 1/25/01 | Expelled | 1/25/01 | No |

| Rountree, Jr. | | | | | |
|---|---|---|---|---|---|
| Sylvia Anita Ryan | District of Columbia | 9/15/00 | Suspended - 1 year | 9/15/00 | No |
| David S. Sabghir | New York | --------- | Suspended - 6 months | 9/24/97 | No |
| Libby D. Salberg | New York | 5/30/01 | Expelled | 5/30/01 | No |
| Patrick P. Salley | Michigan | 11/23/04 | Expelled | 11/23/04 | No |
| Paige Elizabeth Samsky | Georgia | 9/15/00 | Suspended - 3 years | 9/15/00 | No |
| Jesus C. Sandoval | New Mexico | 3/28/05 | Expelled | 3/28/05 | No |
| Alfred G. Santos | Houston, TX | 11/4/04 | Suspended - 14 months | 11/4/04 | No |
| Hiam David Schmerin | Los Angeles, CA | 10/12/01 | Indefinite Suspension | 5/8/02 | No |
| Andrew R. Sebok | Virginia | 3/8/01 | Suspended - 9 months | 3/8/01 | No |
| Louis A. Serio | Rhode Island | 8/20/03 | Suspended - 5 years | 8/20/03 | No |
| Kenneth R. Sheehan | Nevada | 3/16/07 | | | |
| Catherine M. Shelton | Dalllas, TX | 1/21/04 | Suspended - 90 days | 1/21/04 | No |
| Joseph E. Sheridan | Los Angeles, CA | 9/9/04 | Expelled | 12/7/04 | No |
| Zoilo I. Silva | New York | 11/29/06 | | | |
| Mitchell L. Singer | New York | 2/13/06 | Expelled | 2/13/06 | No |
| Gary A. Siplin | Florida | 1/30/07 | | | |
| Jeanette Elizabeth Smith | Florida | 12/20/04 | Suspended - 1 year | 12/20/04 | No |
| John Roger Snow | North Carolina | 9/18/01 | Suspended - 5 years | 9/18/01 | No |
| Curtis L. Solomon | District of Columbia | 10/23/00 | Suspended - 30 days | 10/23/00 | No |
| Alex Sonson | Hawaii | 2/14/05 | Suspended - 90 days | 2/14/05 | No |
| Victor Sparrow | District of Columbia | ----------- | Suspended - 10 years | 6/22/94 | No |

| Gary M. Spraker | Indiana | **5/7/01** | Suspended - 2 years | **5/7/01** | No |
|---|---|---|---|---|---|
| Regina D. Steele | San Diego, CA | **8/11/05** | | | |
| Carol S. Stever | Pennsylvania | **10/19/06** | | | |
| Abdoulai A. Swareh | District of Columbia | **9/13/06** | | | |
| Marshall D. Tandy | Arizona/ Florida | **6/8/01** | Suspended - 5 years | **6/8/01** | No |
| Eric Tarankow | Los Angeles, CA | **1/10/05** | Suspended - 2 years | **1/10/05** | No |
| Raymond B. Thompson | District of Columbia | ----------- | Indefinite Suspension | **1/19/94** | No |
| Barbara W.M. Tomaszweski | Washington | **3/1/05** | Expelled | **3/1/05** | No |
| Hoang N. Tran | Houston, TX | **10/22/04** | Suspended - 5 years | **10/22/04** | No |
| Jose Luis Trujillo | Utah | **11/6/02** | Suspended - 5 years | **11/6/02** | No |
| Mac Truong | New York | **3/19/04** | Suspended - 7years | **8/11/05** | No |
| David P. Ulin | Massachusetts | **5/30/01** | Indefinite Suspension | **5/30/01** | No |
| Ernesto Valdes | Houston, TX | **5/29/03** | Suspended - 5 years | **5/29/03** | No |
| James R. Valinoti | Los Angeles, CA | **7/24/03** | Suspended - 3 years | **7/24/03** | No |
| William P. Vela | San Francisco, CA | **9/1/05** | Suspended - 1 year | **9/1/05** | No |
| Rafael A. Velasquez | Florida | ----------- | Expelled | **3/1/05** | No |
| George A. Verdin | Los Angeles, CA/Hawaii | **12/4/00** | Indefinite Suspension | **12/4/00** | No |
| Rufino J. Villarreal | Nebraska | **4/10/03** | Suspended - 5 years | **4/10/03** | No |
| *Michael A. Walker | Colorado | **5/22/06** | Suspended - 6 months | **4/11/07** | No |
| Sheldon Irwin Walker | New York | **9/15/00** | Expelled | **9/15/00** | No |
| Ida Katherine Warren | Indiana | **10/31/00** | Indefinite Suspension | **10/31/00** | No |
| Rickey A. | Houston, TX | **7/12/06** | Suspended - 1 | **7/12/06** | No |

| | | | | | |
|---|---|---|---|---|---|
| Watson | | | year | | |
| Mark L. Weber | Los Angeles, CA | 7/9/04 | Suspended - 5 years | 7/9/04 | No |
| L. Ari Weitzhandler | Colorado | 7/20/04 | | | |
| Walter Wenko | Los Angeles, CA | 3/8/01 | Suspended - 5 years | 3/8/01 | No |
| Chester Lee Wheless | Dallas, TX | 10/12/01 | Suspended - 5 years | 10/12/01 | No |
| James Eduard White | Oregon | 1/11/06 | Expelled | 1/11/06 | No |
| Paul White *aka* Krishan Kumar | Washington | 2/11/05 | Suspended - 5 years | 2/11/05 | No |
| Robert A. Wilkinson | Georgia | 9/18/01 | Suspended - 3 years | 9/18/01 | No |
| Richard A. Williams | Connecticut | 5/29/03 | | | |
| Arthur G. Williamson | New Jersey | 12/12/00 | Expelled | 12/12/00 | No |
| Gregory S. Wilson | Washington | 11/22/05 | Expelled | 11/22/05 | No |
| Rex Wingerter | Maryland | 11/14/05 | Expelled | 11/14/05 | No |
| Frank D. Winston | San Francisco, CA | 8/19/03 | Suspended - 5 months | 8/19/03 | No |
| Peter D. Winthrop | Illinois | 10/23/06 | Suspended - 2 years | 10/23/06 | No |
| Milton Gary Wolf | Los Angeles, CA | 7/19/06 | Indefinite Suspension | 7/19/06 | No |
| William Wright, Jr. | New Jersey | 12/7/01 | Expelled | 12/7/01 | No |
| Valerie L. Yaeger | Michigan | 3/8/01 | Suspended - 180 days | 3/8/01 | No |
| Richard P. Zipser | Michigan | 3/16/05 | Suspended - 180 days | 3/16/05 | No |

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:    D2003-016

Date:    DEC – 6 2004

In re:   ANTHONY E. RAMOS, ATTORNEY

IN PRACTITIONER DISCIPLINARY PROCEEDINGS

PETITION FOR IMMEDIATE SUSPENSION

ON BEHALF OF DHS:   Rachel A. McCarthy, Ethics Counsel

ON BEHALF OF GENERAL COUNSEL:   Jennifer J. Barnes, Bar Counsel

ON BEHALF OF RESPONDENT: Pro se

ORDER:

PER CURIAM. The respondent was disbarred from the practice of law by the Supreme Court of Florida on December 18, 1997.

Consequently, on October 25, 2004, the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service), initiated disciplinary proceedings against the respondent and petitioned for the respondent's immediate suspension from practice before the DHS. On November 4, 2004, the Office of General Counsel for the Executive Office for Immigration Review (EOIR) asked that the respondent be similarly suspended from practice before EOIR, including the Board and immigration courts.

The respondent argues that he should not be immediately suspended from practice, and that he should be granted "summary judgment" on the charges. Although he admits that he has been disbarred in Florida, he claims that he has not "appeared before the Department". He has also improperly filed before the Board requests for admissions, interrogatories, and a request to produce documents.[1] However, the regulations make clear that any "practitioner" is subject to sanctions under the attorney discipline regulations. *See* 8 C.F.R. § 1292.3. A "practitioner" includes any attorney, as defined at 8 C.F.R. § 1001.1(f). *See id.* Therefore, the government does not bear the burden of showing that the respondent has "appeared" before it. Rather, any practitioner who, like the respondent, has been disbarred by the highest court in a state, is subject to immediate suspension. *See* 8 C.F.R. § 1292.3(c).

In any event, we consider that the DHS has presented evidence that the respondent is the executive director of "All American Immigration Association", and has submitted numerous "Notice

---

[1] We grant the DHS' "Motion To Strike Discovery", for as the DHS argues, there is no provision for discovery before the Board in attorney discipline proceedings.

D2003-016

of Entry of Appearance As An Attorney or Representative" (G-28) forms to the DHS[2], in which he claims to be an "agent" for the party appearing before the DHS. Given this, the respondent has clearly "practiced" before the DHS. *See* 8 C.F.R. § 1001.1(i) (defining "practice" as "the act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the [DHS], or any officer of the [DHS], or the Board").

Further, the regulations do not provide for a hearing prior to the issuance of the immediate suspension order. Instead, the Board is directed to issue an order "forthwith" upon the government's request, when sufficient evidence is presented concerning a disbarment. *See* 8 C.F.R. § 1292.3(c)(2).[3] The regulations provide that a hearing may be requested, and an adjudicating official appointed, in order to reach a final decision concerning the charges in the Notice of Intent to Discipline. *See* 8 C.F.R. §§ 1003.106; 1292.3.

Therefore, the petition is granted, and the respondent is hereby suspended from the practicing before the Board, the Immigration Courts, and the DHS pending final disposition of this proceeding. *See* 8 C.F.R. § 1292.3(c). We direct that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of the DHS.

The respondent has requested a hearing on the charges in the Notice of Intent to Discipline. Therefore, the record will be returned to the Office of the Chief Immigration Judge under 8 C.F.R. § 1003.106, which states that, in attorney discipline cases, that office shall appoint an adjudicating official (an Immigration Judge) when an answer is filed. *See also* 8 C.F.R. § 1292.3(f).

FOR THE BOARD

---

[2]The DHS provides several examples of the G-28 forms, and states that the respondent has filed 111 such forms.

[3]The respondent argues that an "emergency hearing" is required, because he was disbarred without notice, in absentia. As the DHS argues, and as the Supreme Court of Florida "Report of Referee" (Nov. 12, 1997), pp. 1-4, sets forth, the respondent was indeed given notice of the Florida proceedings, but chose not to answer the Bar's complaint, and later chose not to appear at a hearing concerning the sanction. We have considered the respondent's assertion that he was disbarred because of prejudiced members of the community. Such claims are utterly without basis given the Florida "Report of Referee", which details the respondent's misconduct, which led to his disbarment.

- 2 -

**Publish**

Cite as 23 I&N Dec. 843 (BIA 2005)                    Interim Decision # 3521

# In re Anthony E. RAMOS, Attorney

## File D2003-016

*Decided as amended November 15, 2005[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under the attorney discipline regulations, a disbarment order issued against a practitioner by the highest court of a State creates a rebuttable presumption that disciplinary sanctions should follow, which can only be rebutted upon a showing that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity of proof establishing the misconduct, or that discipline would result in injustice.

(2) A practitioner who has been expelled may petition the Board of Immigration Appeals for reinstatement after 1 year, but such reinstatement is not automatic and the practitioner must qualify as an attorney or representative under the regulations.

(3) The Government is not required to show that an attorney has "appeared" before it, because any attorney is a "practitioner" and is therefore subject to sanctions under the attorney discipline regulations following disbarment.

(4) Where the respondent was disbarred by the Supreme Court of Florida as a result of his extensive unethical conduct, expulsion from practice before the Board, the Immigration Courts, and the Department of Homeland Security is an appropriate sanction.

ON BEHALF OF RESPONDENT: Pro se

FOR EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, OFFICE OF GENERAL COUNSEL: Jennifer J. Barnes, Esquire, Falls Church, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Rachel A. McCarthy, Associate Ethics Officer

BEFORE: Board Panel: OSUNA, Acting Vice Chairman; HOLMES and HURWITZ, Board Members.

---

[1] On our own motion, we amend the July 25, 2005, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent.

Cite as 23 I&N Dec. 843 (BIA 2005)          Interim Decision # 3521

OSUNA, Acting Vice Chairman:

On March 17, 2005, an Immigration Judge, acting as the adjudicating official in this case, ordered the respondent expelled from practice before the Immigration Courts, the Board of Immigration Appeals, and the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service). The respondent has filed an appeal with the Board. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent was disbarred from the practice of law by the Supreme Court of Florida on December 18, 1997, based on the court's approval of the November 12, 1997, report of a referee. The referee noted that the respondent was given numerous opportunities to respond to the Florida Bar's complaint but chose not to do so. According to the referee, the respondent also failed to appear at a hearing concerning the proper sanction in the case.

After reviewing the respondent's numerous disciplinary violations, the referee concluded that "reduced to its bare essence, this is a theft case. For a period of six (6) years, respondent did not have sufficient funds in his trust account to cover all client liabilities. At its zenith, there was a total trust account shortage of $396,765.02." In addition to the misappropriation of client funds, the respondent forged his clients' signatures on settlement drafts. In that regard the referee stated, "As with misuse of client funds, the Supreme Court of Florida takes a very dim view of forgery."

The referee also found that the respondent had failed to obey a court order and deliberately lied to a tribunal. Furthermore, the referee noted that the respondent "has engaged in a myriad of other unethical conduct . . . which would warrant disbarment several times over." Such unethical conduct included misrepresentation to successor counsel, collecting excessive fees, and representing a client without authority, among many other things. According to the referee, the "respondent has brought into play almost every aggravating factor in The Florida Standards." The referee therefore found it appropriate to recommend that the respondent receive "enhanced disbarment," meaning that he cannot apply for reinstatement in Florida for 20 years.

Consequently, on October 21, 2004, the DHS initiated disciplinary proceedings against the respondent with the issuance of a Notice of Intent to Discipline and petitioned for the respondent's immediate suspension from practice before the DHS on October 25, 2004. *See* 8 C.F.R. § 1292.3 (2004). On November 4, 2004, the Office of General Counsel for the Executive Office

844

for Immigration Review ("EOIR") asked that the respondent be similarly suspended from practice before the EOIR, including the Board and the Immigration Courts. On December 6, 2004, we granted the Government's petition for immediate suspension.

As the respondent requested a hearing on the charges in the Notice of Intent to Discipline, the record was forwarded to the Office of the Chief Immigration Judge under 8 C.F.R. § 1003.106 (2005), which states that in attorney discipline cases, that office shall appoint an adjudicating official (an Immigration Judge) when an answer is filed. *See* 8 C.F.R. § 1292.3(f) (2005); *see also Matter of Gadda*, 23 I&N Dec. 645, 647 (BIA 2003), *aff'd, Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004).

On March 17, 2005, the Immigration Judge expelled the respondent from practice before the Immigration Courts, the Board, and the DHS. The Immigration Judge determined that an evidentiary hearing was not necessary, as the respondent contested only jurisdiction, which had been established. The Immigration Judge issued another order on March 29, 2005, in which he declined to reconsider his final order. The respondent filed a timely appeal with the Board on April 14, 2005, and subsequently the parties submitted briefs. *See* 8 C.F.R. § 1003.106(c) (providing that the Board has jurisdiction to review the decision of the adjudicating official and conducts a de novo review of the record); 8 C.F.R. § 1292.3(f); *see also Matter of Gadda, supra*, at 647.

## II. ANALYSIS

As alleged by the DHS in its Notice of Intent to Discipline, the respondent has been disbarred in the State of Florida. We therefore find that there are grounds for discipline. 8 C.F.R. §§ 1003.102(e)(1), 1292.3(b) (2005).

The regulations provide for summary disciplinary proceedings against a practitioner who, like the respondent, has been disbarred by the highest court of a State. 8 C.F.R. § 1292.3(c). Where the DHS brings proceedings based on a final order of disbarment, such an order creates a rebuttable presumption that disciplinary sanctions should follow. 8 C.F.R. § 1292.3(c)(3)(ii). Such a presumption can only be rebutted upon a showing that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity of proof establishing the misconduct, or that discipline would result in injustice. *Id.*; *see also Matter of Gadda, supra*, at 648.

The DHS correctly notes in its brief that the respondent set forth seven issues for review in his Notice of Appeal, which were restructured into several issues in the respondent's brief. We also note that the respondent filed a "Reply Brief" on June 10, 2005. We agree with the DHS that the issues raised by the respondent lack merit.

845

Cite as 23 I&N Dec. 843 (BIA 2005)                    Interim Decision # 3521

First, the respondent argues that the disciplinary proceedings are unwarranted, because he was disbarred in 1997 and he could have been reinstated by 1998 had the DHS initiated these proceedings in 1997. The respondent refers to 8 C.F.R. § 1003.107 (2005), which allows for reinstatement to practice before the Board, the Immigration Courts, and the DHS. *See also* 8 C.F.R. § 1292.3(f). A practitioner who has been expelled may petition the Board for reinstatement after 1 year. *See* 8 C.F.R. § 1003.107(b).

As the DHS points out, however, reinstatement is not automatic, simply upon the passage of time. Even had the respondent been expelled from practice before the Board, the Immigration Courts, and the DHS at an earlier date, he would not be eligible for reinstatement because he could not qualify as an attorney under 8 C.F.R. § 1001.1(f) (2005), or as a representative under 8 C.F.R. § 1001.1(j). *See* 8 C.F.R. § 1003.107(b). As a result of the respondent's egregious violations of the Florida Rules, he cannot be reinstated to practice law in Florida for 20 years, and he makes no claim that he has been readmitted to practice law in that State. Moreover, he does not meet the definition of a "representative" under 8 C.F.R. § 1001.1(j), as he is not an accredited representative under 8 C.F.R. § 1292.1(a)(4) (2005) and does not otherwise show that he is "entitled to represent others."

The respondent also argues that the penalty imposed on him by the Immigration Judge, i.e., expulsion, was unfair, because other attorneys have not faced such a severe sanction. The regulations provide that expulsion is one sanction that may be applied against an attorney. *See* 8 C.F.R. § 1003.101(a)(1) (2005). We agree with the Immigration Judge that expulsion is an appropriate sanction in this case. As noted above, the Supreme Court of Florida accepted a referee's report, which found that the respondent had misused client funds, forged client signatures, charged excessive fees, and lied to a tribunal. As a result, the respondent received "enhanced disbarment," which precludes reinstatement to the Florida Bar for 20 years. Given the Supreme Court of Florida's endorsement of the referee's report finding extensive unethical conduct committed by the respondent, it is more than appropriate that the respondent be expelled from practice before the Board, the Immigration Courts, and the DHS. *See Matter of Gadda, supra*, at 649 (finding expulsion from practice appropriate where the respondent had engaged in "egregious and repeated acts of professional misconduct" that resulted in expulsion by the Supreme Court of California).

The respondent also contends that disciplinary sanctions may not be imposed against him because he is no longer an attorney as a result of his disbarment. The DHS counters that the respondent "seeks to render a nullity one of the most commonly charged grounds upon which disciplinary sanctions are imposed by adjudicating officials and the Board." The regulations provide that disciplinary sanctions may be applied against an attorney who has been disbarred.

8 C.F.R. §§ 1003.102(e)(1), 1292.3(b); *see also Matter of Gadda, supra,* at 649. Clearly, therefore, the respondent is subject to expulsion as a disbarred attorney.

To the extent that the respondent claims that he is not subject to sanctions because he did not "practice" before the DHS, his argument fails, as we earlier found in issuing an immediate suspension order on December 6, 2004. The regulations make clear that any "practitioner" is subject to sanctions under the attorney discipline regulation, and that any practitioner who has been disbarred by the highest court in a State can be immediately suspended from practice. *See* 8 C.F.R. §§ 1292.3(a)(2), (c). A "practitioner" includes any attorney, as defined at 8 C.F.R. § 1001.1(f). *See* 8 C.F.R. § 1292.3(a)(2). Therefore, because the respondent is an attorney, he is subject to sanctions as a "practitioner," and the Government is not required to show that he has "appeared" before it.

In any event, as we stated in our December 6, 2004, order, the DHS showed that the respondent is the executive director of "All American Immigration Association" and had submitted numerous G-28 forms (Notice of Entry of Appearance as Attorney or Representative), in which he claimed to be an "agent" for the party appearing before the DHS. Given this, the respondent clearly "practiced" before the DHS. *See* 8 C.F.R. § 1001.1(i) (defining "practice" as the "act or acts of any person appearing in any case, either in person or through the preparation or filing of any brief or other document, paper, application, or petition on behalf of another person or client before or with the [DHS], or any officer of the [DHS], or the Board").

The respondent asserts that the Immigration Judge did not give him sufficient time to prepare his case. He also makes accusations that the Government defrauded the Immigration Judge and Board. His arguments are without merit, and his accusations are unfounded. On January 11, 2005, the Immigration Judge issued an order directing the parties to present a "statement of issues to be decided at hearing, a detailed description of any evidence that they intend to present (including names of any witnesses and copies of any documents), and a statement clearly establishing the relevance of each item of evidence to an issue to be decided at hearing." The DHS presented evidence that the respondent has been disbarred, as well as evidence that the respondent had practiced before the DHS after being disbarred, including appearance forms and other documents filed by the respondent with the DHS. The respondent fails to show that he was denied adequate time to respond to the documents filed by the DHS, which clearly show that he "practiced" before the DHS.

Additionally, to the extent that the respondent attempts to rebut the presumption of professional misconduct established by his disbarment in Florida, we note that the presumption can be rebutted only by demonstrating by clear, unequivocal, and convincing evidence that the underlying disciplinary proceeding resulted in a deprivation of due process, that there was an infirmity

847

of proof establishing the misconduct, or that discipline would result in injustice. *See* 8 C.F.R. § 1292.3(c)(3)(ii); *see also Matter of Gadda, supra,* at 648. As we found in our December 6, 2004, immediate suspension order, the respondent was given notice of the Florida proceedings, but he chose not to answer the Bar's complaint, and he later elected not to appear at a hearing concerning the sanction. The referee's report clearly detailed the respondent's misconduct leading to his disbarment. The respondent made no showing that the proceedings in Florida were unfair, or that he required additional time to dispute the presumption that disciplinary sanctions based on his disbarment should follow.

Finally, the respondent argues that the Immigration Judge erred by issuing his decision without a hearing. The Immigration Judge correctly decided that the respondent's prehearing statement failed to establish that a hearing was necessary. There are no issues of material fact that would require a hearing in this case. As noted, a final order of disbarment creates a rebuttable presumption of professional misconduct, which results in disciplinary sanctions unless the presumption is rebutted. 8 C.F.R. § 1292.3(c)(3)(ii). The respondent offered nothing to suggest that the Florida proceedings were unfair and has identified no issues that would require an evidentiary hearing. *See Matter of Gadda, supra,* at 648.

## III. CONCLUSION

In sum, with agree with the DHS that clear, unequivocal, and convincing evidence establishes that it is in the public interest to discipline the respondent, based on the final order of disbarment issued by the Supreme Court of Florida on December 18, 1997. We further conclude that expulsion is the appropriate sanction.

**ORDER**: The respondent's appeal is dismissed, and he is expelled from practice before the Board, the Immigration Courts, and the DHS.

# EXHIBIT THREE

## (BIA Practice Manual)

# Board of Immigration Appeals
# Practice Manual



*This Practice Manual has been assembled as a public service to parties appearing before the Board of Immigration Appeals.*

*This manual is strictly informational in nature. This manual is not intended, in any way, to substitute for a careful study of the pertinent laws and regulations. Readers are advised to review Chapter 1.1 before consulting any information contained herein.*

*The Practice Manual is updated periodically. The legend at the bottom of each page reflects the last revision date for that page. Updates of the Practice Manual are available through the EOIR Web site at www.usdoj.gov/eoir.*

# 11    Discipline of Practitioners

## 11.1    Practitioner Discipline Generally

The Board has the authority to impose disciplinary sanctions upon attorneys and accredited representatives who violate rules of professional conduct in practice before the Board, the Immigration Courts, and the Department of Homeland Security (DHS). 8 C.F.R. §§ 1003.1(d)(2)(iii), 1003.1(d)(5), 1003.101-106; 1292.3.  See also *Matter of Gadda*, 23 I&N Dec. 645 (BIA 2003).

## 11.2    Definition of Practitioner

For purposes of this Chapter, the term "practitioner" is defined as an attorney or accredited representative, as defined in 8 C.F.R. § 1001.1(f), (j).

## 11.3    Jurisdiction

**(a) *Practitioners.*** — The Board is authorized to discipline any practitioner if the Board finds it to be in the public interest to do so.  8 C.F.R. §§ 1003.101(a), 1292.3(a). Pursuant to regulations, it is in the public interest to discipline any practitioner who has engaged in criminal, unethical, or unprofessional conduct or in frivolous behavior. 8 C.F.R. §§ 1003.101(a), 1003.102, 1292.3(b).

**(b) *DHS attorneys.*** — The Board's disciplinary authority does not extend to attorneys who represent DHS.

**(c) *Immigration Judges.*** — The Board's disciplinary authority does not extend to Immigration Judges.  The conduct of Immigration Judges falls under the jurisdiction of the Department of Justice's Office of Professional Responsibility.  8 C.F.R. § 1003.109.

**(d) *Immigration specialists.*** — The Board does not have authority to discipline individuals such as "immigration specialists," "visa consultants," "notarios," "asesorios," and other individuals who engage in the unauthorized practice of law.  However, the Board has the authority to discipline practitioners who assist in the unauthorized practice of law.  8 C.F.R. § 1003.102(m).  The Board encourages anyone harmed by the

unauthorized practice of law to report it to the appropriate law enforcement, consumer protection, and other authorities.

## 11.4  Conduct

The following conduct may result in discipline by the Board:

- o  frivolous behavior, as defined in 8 C.F.R. § 1003.102(j) and discussed at 8 C.F.R. § 1003.1(d)(2)(iii)

- o  ineffective assistance of counsel as provided in 8 C.F.R. § 1003.102(k)

- o  misconduct resulting in disbarment from, suspension by, or resignation with an admission of misconduct from a state or federal licensing authority

- o  conviction of a serious crime

- o  a false statement of material fact or law made knowingly or with reckless disregard

- o  false certification of a copy of a document made knowingly or with reckless disregard

- o  assisting the unauthorized practice of law

- o  grossly excessive fees

- o  bribery, coercion, or an attempt at either, with the intention of affecting the outcome of an immigration case

- o  improper solicitation of clients or using "runners"

- o  misrepresenting qualifications or services

- o  repeated failure to appear for scheduled hearings in a timely manner without good cause

   o    courtroom conduct that would constitute contempt of court in
a judicial proceeding

See 8 C.F.R. § 1003.102.  This list is not exhaustive or exclusive, and other grounds for
discipline may be identified by the Board.  8 C.F.R. § 1003.102.


## 11.5    Complaints

(a) *Who may file.* — Anyone may file a complaint against a practitioner, including
aggrieved clients, adjudicators, DHS personnel, and other practitioners.  8 C.F.R.
§ 1003.104(a)(1).

(b) *What to file.* — Complaints must be submitted *in writing* on the Immigration
Practitioner Complaint Form (Form EOIR-44), which can be downloaded from the
Internet.  See Chapter 12.2(b) (Obtaining forms), Appendix E (Forms).  The complaint
form provides important information about the complaint process, confidentiality, and the
kinds of misconduct that the Board can discipline.  Complaints should be specific and as
detailed as possible, providing supporting documentation when it is available.

(c) *Where to file.* —

(i) *Misconduct before Board or Immigration Judge.* — Complaints
alleging misconduct before the Board or an Immigration Court are filed with the
Office of General Counsel of the Executive Office for Immigration Review (EOIR).
8 C.F.R. § 1003.104(a)(1).  The completed form and supporting documents should
be sent to:

> Office of General Counsel
> Executive Office for Immigration Review
> 5107 Leesburg Pike, Suite 2600
> Falls Church, VA  22041
>
> Attn: Bar Counsel

EOIR's Office of General Counsel decides whether or not to initiate disciplinary
proceedings.  8 C.F.R. § 1003.104(b).

(ii) *Misconduct before DHS.* — Complaints involving such conduct before DHS are to be filed with the appropriate DHS Office of the Principle Legal Advisor. 8 C.F.R. §§ 1003.104(a)(2); 1292.3(d).

(d) *When to file.* — Complaints based on ineffective assistance of counsel must be filed within one year of a finding of ineffective assistance of counsel by the Board or the Immigration Court. 8 C.F.R. § 1003.102(k).

## 11.6    Duty to Report

Any attorney or accredited representative who practices before the Board, the Immigration Courts, or DHS has an affirmative duty to report whenever he or she:

- ○   has been found guilty of, or pled guilty or *nolo contendere* to, a serious crime (as defined in 8 C.F.R. § 1003.102(h)), *or*

- ○   has been suspended or disbarred, or has resigned with an admission of misconduct

8 C.F.R. §§ 1003.103(c), 1292.3(c)(4). The practitioner must report the misconduct, criminal conviction, or discipline both to the EOIR Office of General Counsel and to the appropriate DHS Office of the Principal Legal Advisor within 30 days of the issuance of the relevant initial order. The duty applies even if an appeal of the conviction or discipline is pending.

## 11.7    Procedure

The regulations provide the procedures for filing complaints and imposing sanctions for misconduct before the Board and the Immigration Courts. See 8 C.F.R. §§ 1003.101 et seq. The regulations also contain procedures for filing complaints regarding misconduct before DHS. 8 C.F.R. § 1292.3.

(a) *Initiation of Proceedings.* —

(i) *Notice of Intent to Discipline.* — Disciplinary proceedings begin when the EOIR Office of General Counsel files a Notice of Intent to Discipline with the Board and serves a copy on the practitioner. The Notice contains a statement of the charge(s) against the practitioner, a copy of the inquiry report (if any),

proposed disciplinary sanctions, the procedure for filing an answer to the Notice or requesting a hearing, and the contact information for the Board. 8 C.F.R. § 1003.105(a).

   **(ii) Petition for Immediate Suspension.** — When the Notice of Intent to Discipline concerns an attorney who has either been convicted of a serious crime or is subject to suspension or disbarment by a state or federal licensing authority, the Office of General Counsel petitions for the immediate suspension of that attorney. 8 C.F.R. § 1003.103(a)(1).

   Usually filed in conjunction with the Notice of Intent to Discipline, the petition for immediate suspension seeks the practitioner's immediate suspension from practice before the Board and the Immigration Courts. 8 C.F.R. § 1003.103(a)(1). DHS may ask that the practitioner be similarly suspended from practice before DHS.

   The regulations direct that, upon the filing of a petition for immediate suspension, the Board will suspend the respondent for as long as disciplinary proceedings are pending. 8 C.F.R. § 1003.103(a)(2). The regulations permit the immediate suspension to be set aside when the Board deems it in the interest of justice to do so. 8 C.F.R. § 1003.103(a)(2). The usual hardships that accompany a suspension from practice (e.g., loss of income, duty to complete pending cases) are generally not sufficient to set aside an immediate suspension order.

   **(b) Response.** — The subject of a Notice of Intent to Discipline has 30 days from the date of service to file a written answer to the Notice and to request a hearing. 8 C.F.R. § 1003.105(c)(1). An answer is deemed filed at the time it is *received* by the Board. See Chapter 3.1(b) (Must be "timely"). The answer should be served on both the EOIR Office of General Counsel and the appropriate DHS Office of Principal Legal Advisor. The time in which to file an answer may be extended for good cause shown through the filing of a motion no later than 3 working days *before* the filing deadline. 8 C.F.R. § 1003.105(c)(1). Second extension requests are rarely granted.

   **(i) Timely answer.** --- If an answer is timely received by the Board, the matter will be referred to an appropriate adjudicator, generally an Immigration Judge, to conduct a disciplinary hearing. 8 C.F.R. § 1003.106. The answer must specifically admit or deny each of the allegations in the Notice of Intent to Discipline. Each allegation not denied is deemed admitted. 8 C.F.R. § 1003.105(c)(2).

If the practitioner wishes to have a hearing, the request for a hearing must be contained in the written answer. Otherwise, the opportunity to request a hearing will be deemed waived. 8 C.F.R. § 1003.105(c)(3).

(ii) *No answer or untimely answer*. — If the Board does not receive a timely answer, the failure to answer is deemed an admission of the allegations in the Notice of Intent to Discipline, and the practitioner is thereafter precluded from requesting a hearing on the matter. 8 C.F.R. § 1003.105(d). The regulations require the Board to enter a default order imposing the discipline recommended by the EOIR Office of General Counsel and the DHS Office of Principal Legal Advisor, absent the presence of special considerations. 8 C.F.R. § 1003.105(d)(2).

A practitioner subject to a default order may move to set aside that order, provided that the motion is filed within 15 days of the date of service of the default order and that his or her failure to answer was due to exceptional circumstances beyond the control of the practitioner (e.g., the attorney's serious illness, death of an immediate relative). 8 C.F.R. § 1003.105(d)(2).

(c) *Hearing.* — If a practitioner timely requests a hearing, the record is forwarded to an Immigration Judge or other appropriate adjudicator to conduct a disciplinary proceeding, which is described at 8 C.F.R. § 1003.106. For the most part, disciplinary hearings will be conducted in the same manner as immigration proceedings. 8 C.F.R. § 1003.106. However, the Immigration Judge presiding over the disciplinary proceeding will not be one before whom the practitioner regularly appears. 8 C.F.R. § 1003.106(a)(1)(i).

(d) *Appeals.* — The regulations provide that the Board may entertain an appeal filed by a practitioner wishing to challenge the adjudicator's disciplinary ruling. 8 C.F.R. § 1003.106(c). The appeal must be received by the Board within 30 days of the oral decision or, if no oral decision was rendered, 30 days of the date of mailing of the written decision. The proper form for filing a practitioner discipline appeal is the Notice of Appeal (Form EOIR-45), which can be downloaded from the Internet. See Chapter 12.2(b) (Obtaining forms), Appendix E (Forms). (This form is specific to disciplinary proceedings and is different from the Notices of Appeal in other types of proceedings. See Appendix E (Forms).) The parties must comply with all of the other standard provisions for filing appeals with the Board. 8 C.F.R. § 1003.106(c). See Chapter 4 (Appeals of Immigration Judge Decisions).

         

**(e)** *Motions.* — As with most motions in immigration proceedings, motions should be filed with the adjudicator who has jurisdiction over the case.

**(i)** *Prior to the entry of a default order or a timely request for a hearing.* — In this instance, motions should be filed with the Board.

**(ii)** *After a timely response has been made.* — In this instance, motions should be filed with the Immigration Judge, unless an appeal to the Board has been taken.

**(iii)** *If a default order has been entered.* — In this instance, motions should be filed with the Board.

## 11.8  Sanctions

The Board is authorized to impose a broad range of sanctions, including "expulsion" (permanent suspension) from immigration practice, public or private censure, and other sanctions deemed appropriate by the Board. 8 C.F.R. § 1003.101(a). The Board may even increase the level of disciplinary sanction. *Matter of Gadda*, 23 I&N Dec. 645 (BIA 2003). When a practitioner has been expelled or suspended, that information is made available to the public on the EOIR website, at the Board, and at the Immigration Courts. See Chapter 11.9 (Confidentiality).

## 11.9  Confidentiality

The regulations discuss confidentiality and public disclosure at the various stages of disciplinary proceedings. See 8 C.F.R. § 1003.108. As a general rule, action taken on a Notice of Intent to Discipline may be disclosed to the public. 8 C.F.R. § 1003.108(c).

## 11.10  Effect on Cases before the Board

**(a)** *Duty to advise clients.* — A practitioner who is disciplined is obligated to advise all clients with a case pending before either the Board or an Immigration Court that he or she has been disciplined by the Board.

**(b) *Pending cases deemed unrepresented.* —** Once a practitioner has been disciplined by the Board and is currently not authorized to practice before the Board and the Immigration Courts, the Board will deem that practitioner's pending cases to be unrepresented. Filings that are submitted after a practitioner has been expelled or suspended will be rejected and returned to the party whenever possible. If the practitioner is later reinstated by the Board, he or she must file a new Notice of Entry of Appearance (Form EOIR-27) in every case, even if he or she previously represented that party. See Chapter 11.12(c) (Cases pending at the time of reinstatement).

**(c) *Ineffective assistance of counsel.* —**The imposition of discipline on an attorney does not constitute *per se* evidence of ineffective assistance of counsel in any case formerly represented by that attorney.

**(d) *Filing deadlines.* —** An order of practitioner discipline does not automatically excuse parties from meeting any applicable filing deadlines.

## 11.11  List of Suspended and Expelled Attorneys

A list of practitioners who have been suspended or expelled from immigration practice appears at www.usdoj.gov/eoir. The list is updated periodically. Copies are also posted at the Board and in the Immigration Courts.

## 11.12  Reinstatement

**(a) *Expiration of suspension.* —** When a period of suspension has run, reinstatement is not automatic. 8 C.F.R. § 1003.107(a). An practitioner who has been suspended from immigration practice and who wishes to be reinstated must:

- file a motion with the Board requesting to be reinstated
- show that he or she can meet the definition of "attorney" set forth in 8 C.F.R. § 1001.1(f) (or § 1001.1(j) if an "accredited representative")

Certain attorneys must meet additional criteria to be reinstated. See subsection (b), below.

**(b) *Petition for reinstatement.*** — A practitioner who has been expelled or has been suspended for a year or more may seek reinstatement with the Board if he or she:

- o   petitions after one year or one-half of the term of suspension has expired, whichever is greater

- o   can meet the regulatory definition in 8 C.F.R. § 1001.1(f) or § 1001.1(j)

- o   can demonstrate by clear, unequivocal, and convincing evidence that he or she possesses the moral and professional qualifications required to return to immigration practice

- o   can show that reinstatement will not be detrimental to the administration of justice

8 C.F.R. § 1003.107(b)(1).  Failure to meet any one of these criteria will result in the request for reinstatement being denied.  Once a request for reinstatement is denied, the attorney may not seek reinstatement for another full year.  8 C.F.R. § 1003.107(b)(2). The Board may, in its discretion, hold a hearing to determine if the attorney meets all the regulatory requirements for reinstatement.

All requests for reinstatement must be served on the EOIR Office of General Counsel and the appropriate DHS Office of Principal Legal Advisor.   8 C.F.R. § 1003.107(b)(1).

**(c) *Cases pending at the time of reinstatement.*** — Suspension or expulsion by the Board terminates representation. A practitioner reinstated to immigration practice by the Board who wishes to represent cases before the Board or the Immigration Courts must enter a new appearance in each case, *even if* he or she was the attorney of record at the time that discipline was imposed.   The practitioner should include proof of reinstatement with each new appearance.  See Chapter 2.3(c) (Appearances).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| ANTHONY E. RAMOS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case Number:  1:06CV01941(RMU) |
| | ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) |
| <u>et al</u>., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**ORDER**

Upon consideration of Defendants' Motion for Summary Judgment, it is this _____ day

of _____, 2007,

ORDERED that Defendants' Motion for Summary Judgment be and is hereby

GRANTED.

It is further ORDERED that summary judgment be and is hereby entered in favor of

Defendants in this action.

SO ORDERED.


_____

United States District Judge