UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

RECEIVED
JUN 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

ANTHONY E. RAMOS

    Plaintiff,

vs.      Civil Action No.: 06 1941 (RMU)

EXECUTIVE OFFICE OF IMMIGRATION
REVIEW and UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICE BOARD OF IMMIGRATION
APPEALS

    Defendant.

---

## PETITIONER'S SIXTH REQUEST FOR JUDICIAL NOTICE ON THE MOTION FOR MANDATORY INJUNCTION

COMES NOW the Petitioner, Anthony E. Ramos, pro se, and files this Sixth Request for Judicial Notice on the Motion for Mandatory Injunction, and states:

1. Prior to filing this Request, and in conformance with Rule 7 of the Local Rules, Plaintiff contacted Defendants, concerning any objections to the filing. Defendants object to this Request.

2. The Petitioner requests judicial notice of the attached article from the Washington Post.

3. This article is particularly relevant because it describes the manner in which immigration judges were selected, based upon political affiliation. Given that the Order which forms the basis of the Petition was issued during the time frame in question, and

further given that the author of the Order has never been identified, this request is relevant to these proceedings.

## MEMORANDUM OF LAW

Rule 201 of the Federal Rules of Evidence allows for judicial notice.

RESPECTFULLY SUBMITTED,

_____
Anthony E. Ramos, pro se
1805 Key Blvd.
Apt. 513
Arlington, VA
202-321-7969
tramos520@verizon.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of June, 2007, the original and one copy of the foregoing was mailed via U.S. mail to: Greg Hughes, Clerk of Court, United States District Court, District of Columbia Circuit, 333 Constitution Ave. N.W., Washington, D.C. 20001, and that a copy was emailed and mailed, via U.S. mail to: Robin M. Meriweather, Esquire, Assistant United States Attorney, 555 Fourth Street, NW, Washington, DC 20530

_____
Anthony E. Ramos

# Immigration Judges Often Picked Based On GOP Ties

## Law Forbids Practice; Courts Being Reshaped

By AMY GOLDSTEIN and DAN EGGEN
Washington Post Staff Writers

The Bush administration increasingly emphasized partisan political ties over expertise in recent years in selecting the judges who decide the fate of hundreds of thousands of immigrants, despite laws that preclude such considerations, according to an analysis by The Washington Post.

At least one-third of the immigration judges appointed by the Justice Department since 2004 have had Republican connections or have been administration insiders, and half lacked experience in immigration law, Justice Department, immigration court and other records show.

Two newly appointed immigration judges were failed candidates for the U.S. Tax Court nominated by President Bush; one fudged his taxes and the other was deemed unqualified to be a tax judge by the nation's largest association of lawyers. Both were Republican loyalists.

Justice officials also gave immigration judgeships to a New Jersey election law specialist who represented GOP candidates, a former treasurer of the Louisiana Republican Party, a White House domestic policy adviser and a conservative crusader against pornography.

These appointments, all made by the attorney general, have begun to reshape a system of courts in which judges, ruling alone, exercise broad powers — deporting each year nearly a quarter-million immigrants, who have limited rights to appeal and no right to an attorney. The judges do not serve fixed terms.

Department officials say they changed their hiring practices in April but defend their selections. Still, the injection of political considerations into the selection of immigration judges has attracted congressional attention in the wake of controversy over the Bush administration's dismissal

See JUDGES, A4, Col. 1

# GOP Loyalists Get Immigration J

JUDGES, *From A1*

last year of nine U.S. attorneys.

The Post analysis is the first systematic examination of the people appointed to immigration courts, the relationships that led to their selection and the experience they brought to their position. The review, based on Justice records and research into the judges' backgrounds, encompassed the 37 current judges approved by Attorney General Alberto R. Gonzales or his predecessor, John D. Ashcroft, starting in 2004.

That year is when the Justice Department began to jettison the civil service process that traditionally guided the selections in favor of political considerations, according to sworn congressional testimony by one senior department official and a statement by the lawyer for another official.

Those two officials, D. Kyle Sampson and Monica M. Goodling, have said they were told the practice was legal. But Justice spokesman Dean Boyd said that immigration judges are considered civil service employees who may not be chosen based on political factors, unlike judges in federal criminal courts.

All the judges appointed during this period who arrived with experience in immigration law were prosecutors or held other immigration enforcement jobs. That was a reversal of a trend during the Clinton administration in which the Justice Department sought to balance such appointees with ones who had been attorneys representing immigrants, according to current and former immigration judges.

Boyd said in a written statement that judges appointed during the Bush administration are "well qualified for their current positions" and that "outstanding immigration judges can come from diverse backgrounds." Boyd also said that race and ethnicity are not factors in hiring but cited statistics showing that immigration courts are "considerably more diverse" than other kinds of courts.



BY ROSS D. FRANKLIN — ASSOCIATED PRESS

**Suspected illegal immigrants in Tucson. The Bush administration's hiring of immigration judges based on political ties has drawn Congress's attention.**

a strong legal background is more important than immigration experience. "The qualities of a good adjudicator don't necessarily focus on the subject matter," he said.

Since Sept. 11, 2001, the Bush administration has said it is employing the nation's 54 immigration courts, with 226 judges, as a central tool of its anti-terrorism policies, using them to deport hundreds of noncitizens who were detained as terrorism suspects but were not charged with crimes.

In 2002, it created stiffer guidelines for appeals and wrote new rules sharply reducing the number of judges who hear them, partly to reduce a large case backlog. That has made it harder for people deemed unwanted by the government to stay in the country.

The infusion of politics into the selection of judges began in the midst of this transformation of the court system. Sampson and Goodling, who participated in the prosecutor firings, did not say which immigration judges had been selected for their political leanings. But records and interviews reveal the Republican ties of many.

position raises questions about the fairness of the conversion."

Another politically connected lawyer, Garry D. Malphrus, was appointed to Arlington's immigration court in 2005. He had been associate director of the White House Domestic Policy Council and, before that, a Republican aide on two Senate Judiciary Committee subcommittees.

During the Florida recount after the 2000 presidential election that brought Bush to office, Malphrus took part in the "Brooks Brothers riot" — when GOP staffers from Washington chanted "stop the fraud" at Miami's polling headquarters.

Other appointed Republican loyalists include lawyer Dorothy A. Harbeck, who represented New Jersey's last GOP candidate for governor; Mark H. Metcalf, an unsuccessful Republican candidate for the state Senate and U.S. Congress from Kentucky who went on to several positions at the Justice Department unrelated to immigration; and Chris A. Brisack, a former Texas county GOP chairman who had been named by Bush, the

The department launched a new hiring program in April that requires public announcements of open positions and detailed evaluations and interviews, with a final decision still in the hands of the attorney general. The action came partly in response to a lawsuit by a veteran immigration counsel who alleged discrimination when she was passed over for two judgeships.

Some judges and other immigration experts are highly critical of the administration's practice of placing political allies on the courts. "When we start seeing people who look like [they're fulfilling] someone's political debt get these positions, it starts to become disturbing," said Crystal Williams, a deputy director of the American Immigration Lawyers Association.

"Immigration law is very complex," said Denise Slavin, an immigration judge since 1995 in Miami, who is president of the National Association of Immigration Judges, a union. "So generally speaking, it's very good to have someone coming into this area with [an] immigration background. It's very difficult, for those who don't, to catch up."

Mike Hethmon, general counsel of the Immigration Reform Law Institute, which advocates stricter border policies, said, however, that

One was Glen L. Bower, whom Bush initially nominated to the tax court. He was never confirmed because lawmakers noted that his amended tax returns showed he had taken inappropriate deductions for entertainment, gifts and meals for three consecutive years. A former Republican state legislator, Bower was the revenue director to then-Illinois Gov. George H. Ryan (R), who would be convicted on racketeering and fraud charges.

A few months earlier, another failed tax court nominee, Francis L. Cramer, a former campaign treasurer for Sen. Judd Gregg (R-N.H.), was appointed as an immigration judge. Cramer's bid for a seat on the tax court foundered after the American Bar Association's taxation section wrote a rare letter to the Senate Finance Committee, saying: "We are unable to conclude that he is qualified to serve."

Cramer was then hired by the Justice Department's tax division and was briefly lent to the department's Office of Immigration Litigation. Ashcroft approved him as an immigration judge in March 2004. The Government Accountability Office, a legislative watchdog, criticized the appointment, saying, "Converting a Schedule C [political] appointee with less than 6 months of immigration law experience to an immigration judge

governor at the time, to the state's Library and Archives Commission.

Bruce A. Taylor, who was appointed as an immigration judge in Arizona last year, was general counsel for two conservative anti-pornography groups, Citizens for Decency Through Law and the National Law Center for Children and Families. Taylor also worked as a senior counsel in the Criminal Division at the Justice Department, but his résumé does not indicate immigration-related experience.

Like other immigration judges contacted last week, Taylor declined to comment. He said the Executive Office for Immigration Review, which oversees immigration courts, had instructed immigration judges to refer questions to the main office in Falls Church. A spokeswoman there referred questions to Justice headquarters.

The recent pattern of hiring for immigration judges provoked a 2005 lawsuit by the government's chief immigration lawyer in El

washingtonpost.com

For today's House and Senate schedules, go to www.washingtonpost.com/congress.

THE WASHINGTON POST

# udgeships

Paso for 22 years. Guadalupe Gonzales — no relation to the attorney general — alleged she was denied a judgeship twice in favor of less-qualified white men who were hired without an open application process.

Her suit alleged that, between 2001 and late 2005, only two Latinos were appointed nationwide as immigration judges. Justice Department records make clear that the immigration bench is overwhelmingly male and white, even though Spanish-speaking people from Latin America make up at least 70 percent of the caseload.

The Justice Department responded in court papers that Gonzales's lawsuit should be thrown out; it argued that she had not identified a discriminatory practice and that immigration judges did not have be hired as part of a competitive process. It said that all but four immigration judges chosen during the period in contention — from late 2003 to 2006 — were hired without public competition.

### Court Politics

*About a third of the immigration judges appointed since 2004 had Republican or Bush administration political connections and little or no experience with immigration law. Many of the remaining appointees had worked in immigration enforcement jobs.*

**Immigration judges appointed since 2004**

- **12** GOP connections/administration insiders
- **16** Immigration enforcement experience
- **9** Other legal experience

*Among all sitting immigration judges, three-quarters are white males.*

**All immigration judges**

| WHITE | HISPANIC | BLACK | ASIAN |
|---|---|---|---|
| 170 | 24 | 22 | 9 |

NATIVE AMERICAN 1

SOURCES: Justice Department, public records

THE WASHINGTON POST

In September, Judge Emmet G. Sullivan of the U.S. District Court for the District of Columbia ruled against the department, finding that Gonzales "had identified a particular policy that has a discriminatory effect on a particular group." Sullivan said that one judge hired in El Paso did not meet the minimum qualifications for the job. Neither, the judge said, had Gonzales's level of experience.

*Research director Lucy Shackelford contributed to this report.*

FREE ON OUR LOT